## MARY SAGNELLA
*vs.*
## CENTRAL MANUFACTURERS MUTUAL INSURANCE CO.

Superior Court        New Haven County        File No. 47381

MEMORANDUM FILED DECEMBER 27, 1941.

*William McKenna* and *Anthony DeLucia*, of New Haven, for the Plaintiff.

*Charles Blackall* and *Frederick Waterhouse*, of Hartford, for the Defendants.

O'SULLIVAN, J.   This is an action on an insurance policy to recover for the loss by fire of various articles of personal property located in Ye Old Colony Inn at Meriden.   The complaint alleges the issuance of the policy, the payment of an annual premium of $63.20, the loss, and a compliance with the requirement for proof of loss.   After establishing these allegations, the plaintiff rested.   This conformed with our practice.   *Benanti vs. Delaware Insurance Co.,* 86 Conn. 15.

From then on, a veritable deluge of evidence was unloosed which cannot possibly be detailed, without making of this memorandum a tome.   The more practicable plan will be to sketch a broad outline of the events which have given rise to this litigation.

It appears that in 1932, Charles Chieppo, also known as Pasquale Chieppo, bought from Mrs. Grace Kubeck and her daughter, Doris, a parcel of land in Meriden, but at his request, his wife, Rose was named as grantee.   On the property stood an old frame building known throughout the countryside as Ye Old Colony Inn.   Through the years it had served the traveler on his journey as a stopping point where rest and refreshment might be obtained and undoubtedly was not unlike many similar institutions that have graced our landscape in the past.   Whether or not Washington ever enjoyed its hospitality was not developed, although one must confess that this fact, if established, would have proved more interesting than material to the cold, legal problem born of the pleadings. At any rate, Chieppo chose to carry on tradition by holding the place out as one where the wayfarer, both the weary and the otherwise, might obtain food and drink to refresh himself.

At the beginning of his venture, he purchased and installed the fixtures and equipment that one customarily expects to find in such places.   On October 5, 1933, for some undisclosed reason, Mrs. Chieppo reconveyed the property to the

former owners, and then, on November 20, 1933, she entered into a ten year lease of the premises at an annual rent payable in monthly installments of $60.

The Twenty-first Amendment to the Federal Constitution, it will be recalled, became effective on December 5, 1933. The approach of this anticipated event was probably what prompted the ten year lease as well as the program of extensive improvements which, just about this time, Chieppo planned to embark upon. But, whatever may have been the reason, he began to remodel both the building and his fixtures during the last part of November and had the work completed by December 31st, for on that evening the inevitable celebration of the advent of a new year was held.

On January 4, 1934, Chieppo mustered and paid the rent for December. On February 1st, however, being without funds, a condition more honored by him in the observance than in the breach, he permitted the plaintiff, who was his friend, to pay the January rent. There is no significance to the fact that the receipt was made out in the name of Mrs. Sagnella, other than that she paid the rent for Chieppo. This last payment was the final installment received by the Kubecks, although one could hardly say that this was due to a lack of insistence on their part, for they continued to make demand upon demand, but without avail.

On March 9th, Chieppo executed, in favor of one Brysh, what purported to be a chattel mortgage on some of the personalty located at the inn.

On March 24th, certain fixtures were attached by virtue of a writ directed against Chieppo. On March 29th, he furnished a bond to effect a release. This bond, signed by himself as principal and by his brother and the latter's wife as sureties, contained, among other terms, a statement that "an attachment has been placed on property of said Pasquale Chieppo."

About this time, he sought information from a broker as to the placing of insurance on the contents of the inn, and, thereafter, on April 5th, a policy was issued through one of the defendant's authorized agents. The policy, however, ran in favor of the plaintiff. The premium was paid by Chieppo and some time later the policy was delivered to him by the broker whom he had first consulted.

If any business was being done in the meantime, it was microscopic. During parts of March and April, the place was under attachment and at times a keeper was on hand. Matters went from bad to worse. Eventually, the power company shut off the electricity, presumably for the nonpayment of rates. On April 28th, the sheriff in charge locked the place up for the night. About midnight fire broke out and before the department succeeded in extinguishing it a great amount of damage had been done to the first floor and its contents.

Was the building intentionally burned? I doubt that it was, or rather let me put it this way: on the evidence, I cannot reach such a conclusion. It might well be that the fire started from a candle, for candles were being used while the electricity was off. There are, it is true, many circumstances from which a suspicious mind might infer a deliberate act of burning. I prefer to decide the case on a different theory.

On May 31st, the plaintiff furnished a proof of loss, but the defendant, having then learned for the first time the facts concerning the ownership of the personalty, has consistently refused to honor the claim.

One of the conditions of the policy upon which the defendant relies is that it shall be void "if the interest of the assured be other than unconditional and sole ownership." While it is true that this provision is tucked away and almost lost in the maze of small, barely decipherable printing which covers the inside pages of the policy, a practice which has always given me the impression of a grand strategy aimed at discouraging the assured from reading and then discovering what he has actually agreed to, it is nonetheless a part of the insurance contract. It is a condition precedent and the burden of establishing the required degree of ownership rests on the plaintiff. *Benanti vs. Delaware Insurance Co., supra.*

The difficulty which the plaintiff has been unable to surmount is due to an inability to prove a status which just didn't exist. She never was the owner of the contents of the inn. To one viewing the picture as a whole, this seems abundantly clear.

Chieppo, it was, who originally purchased the inn in 1932. He arranged for the ten year lease; he was in constant attendance on the premises during business hours; he bought the personalty and installed it; he was in complete and sole

charge; he hired the artisans who made the improvements; he executed a would-be chattel mortgage on the fixtures; he arranged for the issuance of the policy; he paid the premium; he kept the policy; he talked with the creditors. In short, each and every act of his was of the character that naturally is to be expected of an owner.

On the other hand, the plaintiff was a housewife; she never was consulted concerning the conduct of the business or the difficulties into which it had fallen; she seldom went to the premises, for she lived in New Haven; she took no part in its management. Indeed, her testimony creates the decided impression that whenever she entered the inn, she did so as a social visitor and friend of the real proprietor.

Finally, in connection with his apparent acts of dominion, Chieppo made statements at various times to the effect that he was the owner. These statements, though made in the absence of the plaintiff, were admissible. *Avery vs. Clemons,* 18 Conn. 306. They were not received as declarations of third persons to prove the truth of what was asserted, but as being of themselves acts or things done which explain the acts of ownership which they accompanied and showed their true character.

As the plaintiff was not the sole and unconditional owner of the personal property, the policy was void.

It is unnecessary to decide why Chieppo had the policy run to the plaintiff. Perhaps it arose from some strange notion that with business in the deplorable state into which it had fallen, with creditors pressing for payment, with security being demanded and with attachments being levied, he might escape in some miraculous manner from his difficulties. But I draw no conclusion as to his motive, for it would merely amount to speculation, and this speculation, unfortunately, cannot be dispelled in view of the failure of one or the other of the parties to have him in court to give the trier the benefit of his testimony.

At the end of its answer the defendant states that it is "ready and willing to return and refund to the person or persons legally entitled thereto the premium paid upon said policy and does hereby offer to refund and return said premium with interest to the plaintiff if the court shall find her to be the person legally entitled thereto."

The words just quoted are taken verbatim from the answer

in *Mishiloff vs. American Central Insurance Co.*, 102 Conn. 370. *See* 341 Conn. Records and Briefs, back of page 1648. That case involved a suit seeking the reformation of a policy, the premium of which had been paid by the plaintiff. While the Supreme Court, on appeal, concluded that the policy was null and void, it, nevertheless, returned the matter to the Superior Court to "render judgment for the plaintiff for the premium paid by him to defendant, with interest and costs." But that situation is not analogous to the instant one. This plaintiff paid nothing at all to the defendant, and Chieppo, who did pay, is not a party to the action.

Enter judgment for the defendant.