## PREFERRED ACC. INS. CO. OF N. Y. v. GRASSO et al.

No. 67, Docket 21776.

United States Court of Appeals Second Circuit.

Argued Jan. 9, 1951.

Decided Jan. 29, 1951.

988

John W. Joy, of Hartford, Conn. (Henry C. Stone, of Hartford, Conn., on the brief for appellant Grasso, and Nathan Aaron, of Hartford, Conn., on the brief for appellant Ostop), for defendants-appellants.

DeLancey Pelgrift, of Hartford, Conn., for plaintiff-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an action by an insurance company for a declaratory judgment of non-liability under one of its policies. The plaintiff having obtained the relief it sought, an appeal has been taken by the insured and a damage-claimant of the latter. The issue is primarily one as to the extent of coverage of the policy under the circumstances disclosed. It is a "Dealers, Garage or Service Station Liability Policy" of the Protective Indemnity Company, a former subsidiary now merged with plaintiff, issued on December 22, 1944, to defendant-appellant Charles Ostop, who operated the Servall Garage in Hartford, Connecticut. These are the salient facts:

On December 20, 1945, defendant Arvin LaBier, an employee of Ostop, was on his way to work in a Ford automobile of disputed ownership when he struck and injured defendant-appellant Alfred Grasso. Grasso thereupon sued Ostop and LaBier in the Superior Court for Hartford County, alleging that Ostop owned the car and that LaBier was his "agent, servant or employee" acting within the scope of his employment. The company's counsel defended the suit. This proceeding ended in a mistrial. In a second trial the case was about to go to the jury when a settlement of $6,200 was agreed upon and the usual stipulation with releases was executed, under date of February 2, 1949, being signed by Grasso, with his attorney Henry C. Stone as a witness. When Mr. Stone came to get the check from the company he told the latter's counsel that he had found on record in the Hartford Town Clerk's Office a conditional bill of sale which showed that Ostop had conveyed the offending Ford to LaBier on July 30, 1945. The company declined to deliver the check, notwithstanding Mr. Stone's protestations that the sale was unimportant in the tort action, since it had been made simply to "raise money" and was therefore a chattel mortgage, with ownership of the car still in Ostop. The company nevertheless obtained the grant of motions for a mistrial and for withdrawal by counsel, and did then withdraw from the case. Ostop obtained new counsel and on May 11, 1949, a judgment for the agreed $6,200 was entered in the Superior Court.

Meanwhile, on March 16, 1949, the company instituted this action in the court below praying for a declaration of non-liability for Grasso's injury and an injunction restraining the three defendants Grasso, Ostop, and LaBier from suing for indemnification under the policy. The court entered a judgment for the plaintiff which it then set aside on defendants' motion to permit of the submission of newly discovered evidence as to the ownership of the Ford. But it found the new evidence still unhelpfully disputatious, and so re-entered its former judgment granting the plaintiff

the relief sought. Defendants Grasso and Ostop alone appealed.

The policy in question appears about as involved as such contracts have a way of appearing; but as we read it, in agreement with the district judge, it covers claims for accidents by cars *owned* by the insured Ostop quite broadly and generally, but does not cover those from cars owned and driven by employees except while on the business of the garage. This appears to follow both from the language of the policy and its structure and arrangement. The schedule of coverage on its face shows under the title "Operations" and the heading "1. Automobile Dealer, Automobile Repair Shop" an estimated annual remuneration for employees of $3,300, followed first by the insurance rates per $100 based thereon and then by "Estimated Advance Premiums" of $74.18 for "Coverage A Bodily Injury Liability" and $16.30 for "Coverage B Property Damage Liability." Later insertions show "Employees End." and "Customers End."—each in the amounts of $8.94 and $2.76 for Coverage A and B respectively. Thus, the main part of the total premium of $134.81 for the year covered the insured's own liability as operator of an automobile repair shop. This is particularly defined in the body of the policy and shows broad coverage against liability for accidents on the garage premises and adjoining public ways and all operations necessary and incidental to the repair of cars as well as "the ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations, and also for pleasure use."

When we come to the "Endorsement" for "Additional Interests," however, the situation is somewhat different. We shall refer to that for employees, omitting for our present purposes the endorsement for customers, though that contains like restrictions to those we shall discuss. By the "Employees End." the insurance of the policy for Bodily Injury Liability and for Property Damage Liability is extended:

"1. To any employee of the named insured, as insured, provided:

"(a) the insurance applies only to such employee of the named insured engaged in operations classified as 'automobile dealer or repair shop,' whose remuneration is included in the entire remuneration upon which premium for the policy is based; and

"(b) the insurance applies to any such employee while using, for such business operations or for pleasure purposes, any automobile covered under such classification. * * *

"3. The insurance does not apply

"(a) unless the actual use of the automobile is with the permission of the named insured;

"(b) under paragraph (1) with respect to any automobile owned by any such employee, or by a member of his family other than the named insured; * * *"

The limitations here stated, particularly that of 3(b), seem therefore rather clearly to exclude liability for acts of an employee in his own car when not on company business. The policy also contains usual provisions, requiring the company to defend in the name of the insured and the insured to co-operate with the company in defense, the latter being stated as one of the conditions precedent which must be fulfilled before the company is under a duty to pay.

In this action the plaintiff's complaint denied that Ostop owned the Ford at the time of the accident and also that LaBier was then driving it on garage business; it also alleged that the insured had not co-operated in the defense of the state court action. Trial was therefore upon these three issues. As to the first the district judge found the evidence conflicting and unsatisfactory and finally settled it through the medium of the burden of proof, finding that "defendants have failed to establish by a fair preponderance of the evidence that ownership of the car was in Ostop." As to the second it found: "At the time of the accident LaBier was on his way to work and was not on any business or errand for the garage of his employer." And as to the third it said: "Ostop was not frank with the insurer, concealing the existence of the conditional bill of sale and testifying falsely with regard to LaBier's use of the car. That was lack of cooperation, since knowledge of those matters was

material to defense and to settlement negotiations."

Before we consider the interesting question of the burden of proof, we shall dispose of defendants' attack upon these findings. The evidence, consisting of both oral and written testimony, was so confused and contradictory, and so admitting of varying interpretations, that we certainly cannot consider the judge's conclusion "clearly erroneous." Even had the judge found more pointedly against the defendants, we should not have been disposed to reverse; the various bills of sale of the elusive Ford and the conflicting testimony —which hardly seems worth restating here —were certainly not convincing of Ostop's ownership. The balanced decision of lack of proof was therefore a very honest representation of the judicial mind which we accept in our ensuing discussion. Nor is there any showing of error in the conclusion that LaBier was on his own business at the time. Ostop had testified that LaBier had worked into the evening at the garage and that he had told him to take the Ford, which was often used for hauling and other purposes in the garage, so as to get home quickly. The accident happened the next morning on LaBier's way back to work. But the mere return in one's own car from a night's rest to work in the morning is not a course of conduct making the employer liable as principal, or the use of the car a business purpose. See 1 Restatement, Agency, § 228, comment c, 1933. There is no help from the broad presumption of agency from ownership of a car stated in Conn.Gen.Stat.1949, § 7905. This applies to create only a rebuttable presumption that the operator of the automobile was an agent of the owner, where ownership is proven. Until that proof is given, the statute is not germane.

Turning now to the issue of burden of proof, it is of course obvious that liability of the insured does not automatically show liability of the insurer; coverage and breach must be shown and the ultimate burden of proof of this rests upon the insured. This is certainly true where the insured is the plaintiff or where the injured person sues the insurer directly under the subrogation statute, Conn.Gen.Stat.1949, § 6191. That simply allows the injured person who has recovered judgment against the insured to stand in the latter's shoes, but it does not deprive the insurer of its defenses and allows the direct action only "to the same extent that the defendant in such action [i.e., the insured] could have enforced his claim against such insurer had such defendant paid such judgment." Ibid. The general rule therefor is well stated by Chief Justice Maltbie in Rochon v. Preferred Accident Ins. Co. of New York, 118 Conn. 190, 171 A. 429, 431: "It is our established practice that one suing upon an insurance policy may allege in general terms compliance with all the obligations it imposes upon him, that the defendant insurer must then allege any breach of the terms of the policy upon his part upon which it proposes to rely, but that such an allegation does not shift the burden of proof, the plaintiff being bound to prove performance as regards the breach alleged. Harty v. Eagle Indemnity Co., 108 Conn. 563, 565, 143 A. 847." The same rule is also expressed in Manthey v. American Automobile Ins. Co., 127 Conn. 516, 18 A. 2d 397, 399. In fact the difference here stated between general proof permitted until the defendant points to some special defense and the ultimate burden which rests upon the plaintiff throughout is now generally applied in this country either by judicial decision or by special rule or code, as in Fed.Rules Civ.Proc. rule 9(c), 28 U. S.C.A.; N. Y. Civil Practice Rule 92. See Clark, Code Pleading 280–284, 2d Ed. 1947. Hence had Grasso or Ostop brought the action there would be no doubt but that the burden would have fallen upon them.[1]

---

1. Cases such as Wiley v. London & Lancashire Fire Ins. Co., 89 Conn. 35, 92 A. 678, cited by defendants to show a burden placed upon the insurer where the insured has proven ownership of the insured property at the time the policy was originally written, are inapplicable here. Thus there the action was on a standard fire insurance policy by an insured who had conveyed away and subsequently reacquired the insured property. Here the policy is not on a spe-

■ Does the fact that this is the insurer's action for a declaratory judgment change the principle? It would seem rather anomalous that so important a matter should depend on the chance of who first sues and the outstanding authority in the field argues against such a result. Borchard, Declaratory Judgments 404–409, 2d Ed. 1941. Thus, after first stating that "since as a rule the risk of non-persuasion is on the plaintiff, it is not surprising to find that the burden of proof in declaratory actions rests, in the vast majority of cases, on the moving party," Professor Borchard proceeds to point out that in cases such as the one we have here, "Inasmuch as the company's claim of immunity is in reality negatively defensive, there seems no impropriety in leaving the burden of proof exactly where it would have been had suit been brought on the policy, namely, on the insured or injured person." And he concludes that the burden of proof in such case is not automatically on the plaintiff, but on him who "without evidence would be compelled to submit to an adverse judgment before the introduction of any evidence," or who asserts the affirmative of any issue, quoting Reliance Life Ins. Co. v. Burgess, 8 Cir., 112 F.2d 234, 237, 238, certiorari denied 311 U.S. 699, 61 S.Ct. 137, 85 L.Ed. 453. This statement of the rule has been adopted by other courts: Bauer v. Clark, 7 Cir., 161 F.2d 397, 400, certiorari denied 332 U.S. 839, 68 S.Ct. 210, 92 L.Ed. 411; Pacific Portland Cement Co. v. Food Machinery & Chemical Corp., 9 Cir., 178 F.2d 541, 546, 547. While the first case awarding the burden of proof to the defendant in an action such as the one at bar, Travelers Ins. Co. v. Greenough, 88 N.H. 391, 190 A. 129, 109 A.L.R. 1096, was later questionably distinguished or limited, Borchard, op. cit. at 406, 407, we think the principles stated by Professor Borchard and the rule enunciated in Reliance Life Ins. Co. v. Burgess, supra, are correct. The suggestion to the contrary in 62 Harv. L. Rev. 787, 836–838, 1949, may have reference only to a burden of going forward where it may well be appropriate. If it goes beyond this, however, we think it not persuasive against the other authorities cited. Under Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, and cases there cited, we are bound in any event to follow the Connecticut rule. As we have seen, that appears quite definite with no suggestion of a variation dependent upon the nature of the action.

■ These conclusions are substantially dispositive of the case. We advert, however, to two further matters because of the stress placed upon them by defendants. The first is the contention that LaBier's agency for Ostop at the time of the accident was a matter entirely for the state court in the action of negligence and that the judgment there against Ostop for LaBier's negligence settled the issue so that it could not be "reopened" as plaintiff was attempting to do in this action. The extent of estoppel under Connecticut law seems not altogether clear; even had plaintiff defended the state action to the end, there might still have been some question as to how far it was bound here. See discussion of the Connecticut law in Shelby Mutual Cas. Co. of Shelby, Ohio v. Richmond, 2 Cir., 185 F.2d 803. But here there was neither stipulation nor judgment to bind plaintiff. Indeed the issue of agency for Ostop's liability and of acting on garage business where driving one's own car, to the extent of showing insurance coverage, while similar seem hardly so identical as to justify a holding as a matter of law that decision of the one necessarily settles the other. In any event no such decision has been had against this plaintiff which

---

cific piece of property. Moreover, here there is no reason to apply the suggested rule, since it is bottomed on a concept of insurable interest: "The object of the provision of a policy avoiding it in case of change of title, interest, or possession is that the insured shall have no greater motive to destroy the property, or less interest in guarding it." 7

A.L.R. 1608. And see Note, 24 Yale L.J. 433, 434. Cf. also 52 A.L.R. 843–851. Actually the rule, if accurately stated, is that an insurer must show damage by transfer where the insured has lost title and reacquired it. Here it is not a case of lack of damage, but of lack of coverage if there is no ownership.

had justifiably removed itself from the case before the judgment.

The other point is the defendants' answer to the claim of lack of co-operation to the effect that any of the matter not disclosed was immaterial to the plaintiff's defense of the state court action. But since LaBier's agency was not conclusively established, as defendants have claimed, ownership of the car was outstandingly material, particularly in view of the statutory presumption flowing from ownership to which we have referred above. Hence non-disclosure of all the facts as to ownership was quite prejudicial—as was also Ostop's attempt to show greater responsibility for LaBier's acts at the time of the accident than the evidence justified. The district court therefore committed no error in sustaining this defense also.

Affirmed.