Charles N. BAPTIST, Plaintiff,

v.

**BANKERS INDEMNITY INSURANCE COMPANY, Defendant.**

Civ. No. 7826.

United States District Court
D. Connecticut.

July 27, 1965.

---

3. See Plaintiffs' Memorandum of Law in Support of Motion to Remand, Point II.

David S. Maclay, of Marsh, Day & Calhoun, Bridgeport, Conn., for plaintiff.

Philip R. Shiff, New Haven, Conn., and Adrian W. Maher, Bridgeport, Conn., for defendant.

TIMBERS, Chief Judge.

Plaintiff, in the second count of his amended complaint of March 23, 1962, seeks reformation of a garage liability insurance policy and recovery of $35,000 from defendant on the policy as reformed.

Trial of the first count, in which plaintiff sought recovery in the same amount from defendant under the terms of the policy, resulted in a jury verdict in favor of defendant.

After trial of the second count to the Court without a jury, the Court holds that plaintiff is not entitled to reformation of the policy and orders that judgment enter in favor of defendant.

## JURISDICTION

Jurisdiction is founded on diversity of citizenship.[1] Plaintiff is a New Hampshire citizen. Defendant, being a New Jersey corporation and having its principal place of business in New Jersey, is a New Jersey citizen. The amount in controversy exceeds $10,000, exclusive of interest and costs.

## STATE COURT PROCEEDINGS

Plaintiff was injured December 26, 1952 in an automobile accident in Stamford, Connecticut, involving a collision between an automobile owned and operated by plaintiff and a 1949 Chevrolet operated by one David Shanen.

In November 1953, plaintiff brought an action in the Superior Court for Fairfield County to recover for personal injuries and property damage claimed to have been sustained by him as a result of the accident. The Superior Court action was brought against Shanen as the operator of the Chevrolet and against Harold's Auto Service, Inc. (Harold's) whose agent Shanen was alleged to be at the time of the accident and in the course of whose employment Shanen was alleged to be operating the Chevrolet at the time of the accident. The Chevrolet was described in the Superior Court writ as "his [Shanen's] automobile".

Bankers Indemnity Insurance Company (Bankers Indemnity), defendant in the instant action, appeared through counsel in the Superior Court action and defended Harold's under the garage liability policy[2] which it had issued to Harold's as the named insured. Bankers Indemnity did not appear for or defend Shanen because he—not Harold's—was alleged to be the owner of the Chevrolet; and Bankers Indemnity understood that Harold's was not the owner. Under an exclusion clause, the policy did not cover an automobile owned by a director or stockholder of Harold's, the named insured.[3] Shanen was a director and stockholder, as well as president, of Harold's at the time of the accident.

In June 1957, judgment was entered in the Superior Court (i) upon a jury verdict in favor of plaintiff in amount of $45,000 against Shanen who defaulted in appearing, and (ii) upon a directed verdict in favor of Harold's on the ground there was no evidence from which the jury could have found that at the time of the accident Shanen, as the agent of Harold's, was operating his automobile in the course of his employment.

In October 1958, on plaintiff's appeal the Supreme Court of Errors affirmed the

---

1. 28 U.S.C. § 1332(a) and (c), as amended, 72 Stat. 415 (1958).

2. The policy actually issued was not available at the time of trial of the instant action in this Court, having been lost or destroyed. Plaintiff's Exhibit 7 is a "specimen" policy which contains in all respects here material the provisions of the policy actually issued by Bankers Indemnity.

3. Paragraph III, entitled "Definition of Insured", in the specimen policy (Plaintiff's Exhibit 7), in pertinent part, reads:

   "*  *  * This policy does not apply:  *  *  *

   [b] to any partner, employee, director, stockholder or additional insured with respect to any automobile owned by him, or by a member of his household other than the named insured."

judgment entered upon the directed verdict in favor of Harold's.[4]

## DISTRICT COURT PROCEEDINGS

The default judgment against Shanen not having been satisfied within 30 days after it was rendered, plaintiff, suing as a judgment creditor subrogated to the rights of Shanen as an alleged insured,[5] brought the instant action in this Court in May 1959 against Bankers Indemnity under its garage liability policy.

After five years of extensive pre-trial litigation, including various amendments of the pleadings, innumerable motions addressed to the pleadings, lengthy discovery proceedings and frequent pre-trial conferences, there emerged a final pre-trial order directing that the issues raised by the first count of the amended complaint of March 23, 1962 be tried to a jury [6] and, depending upon the outcome of the jury trial, that the issues raised by the second count be tried to the Court without a jury.[7]

## FIRST COUNT

At the trial of the first count, the jury was instructed, under the Court's binding interpretation of the policy in question,[8] that the sole issue to be determined by the jury was whether, at the time of the accident of December 26, 1952 which gave rise to the state court action, Shanen was the owner of the automobile operated by him, Shanen being the state court judgment debtor and the alleged insured of whose rights plaintiff is subrogee in the instant action. The jury was further instructed that under the terms of the policy (a) if Shanen *were* found to have been the owner at the time of the accident, the jury must return a verdict for defendant, but (b) if Shanen were found *not* to have been the owner at that time, the jury must return a verdict for plaintiff in the amount of $25,000.[9]

After a seven day trial, the jury returned a verdict for defendant on the first count, thus determining, in view of the Court's charge, that Shanen *was* the owner of the automobile operated by him at the time of the accident of December 26, 1952.

## SECOND COUNT

### Relief Sought

In order to remove the bar against recovery under the terms of the policy by reason of Shanen's ownership of the automobile at the time of the accident, plaintiff seeks in the second count of his complaint " * * * by way of alternative relief, judgment that said policy be reformed by striking therefrom in its entirety subparagraph [b] under the head-

---

4. Baptist v. Shanen, 145 Conn. 605, 145 A.2d 592 (1958).

5. Conn.Gen.Stat. § 38–175 (1958), in pertinent part, provides:

   "Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

6. Rule 38(c), Fed.R.Civ.P.

7. Rule 39(a) (2), Fed.R.Civ.P.; 5 Moore's Federal Practice ¶ 38.22, at 183 (2d ed. 1964).

8. See *Libero v. Lumbermens Mutual Casualty Company*, 143 Conn. 269, 274, 121 A. 2d 622 (1956).

9. While plaintiff obtained a $45,000 judgment against Shanen in the state court action, the liability, if any, of Bankers Indemnity in the instant action would be limited to the $25,000 maximum coverage of its policy.

   Defendant conceded that the accident of December 26, 1952 *was* one of the "hazards" contemplated by the policy, and that there would have been coverage *if* the automobile involved was not owned by Shanen, a director and stockholder of the named insured.

ing 'III. Definition of Insured', and that plaintiff then may have judgment for $35,000.00 damages." [10] In other words, the second count seeks reformation of the garage liability policy which was the basis of plaintiff's unsuccessful claim under the first count by striking the exclusion clause to the extent that it makes the policy inapplicable "to any partner, employee, director, stockholder or additional insured with respect to any automobile owned by him or by a member of his household other than the named insured." [11]

*Applicable Connecticut Law*

■■ Under Connecticut law, reformation of a written agreement, such as the garage liability policy here involved, may be granted when the written agreement does not express the true intent of the parties by reason of either (a) mutual mistake of the parties, or (b) unilateral mistake of one party coupled with fraud or other inequitable conduct of the other party.[12] As here used, the term "fraud" has been defined as follows: [13]

> "Fraud, for the purposes of this rule, includes not only misrepresentation known to be such, but also concealment or nondisclosure by a party who knows that the other party is acting under a mistake as to material facts."

*Issues Raised*

The crux of plaintiff's claim of reformation is set forth in paragraphs 18–20 of the second count as follows: [14]

"18. Prior to the actual issuance of said policy, defendant, through its said agent, agreed with Shanen and Harold & Shanen's Auto Service, Inc. that the policy to be issued would be issued in the name of Shanen's Auto Service, Inc., but would also fully cover Shanen at all times while he was driving said Chevrolet.

"19. By mistake, and in violation of the terms of the agreement between defendant, Shanen, and Harold & Shanen's Auto Service, Inc., said policy as issued provided under heading 'III. Definition if Insured' as follows:

> '* * * This policy does not apply: * * * [b] to any partner, employee, director, stockholder or additional insured with respect to any automobile owned by him. * * *'

"20. Shanen did not know that said policy incorrectly set forth the agreement of the parties until some time after December 26, 1952."

■ While plaintiff's allegations are lacking in the clarity and preciseness which normally would be required to spell out a claim of reformation of a written agreement under Connecticut law, the Court, viewing the allegations liberally and in the light most favorable to plaintiff,[15] construes them as setting forth alternate equitable grounds for the relief sought: (a) mutual mistake of

10. Amended Complaint of March 23, 1962, Second Count, last paragraph.

11. Supra note 3.

12. Rodie v. National Surety Corporation, 143 Conn. 66, 69, 118 A.2d 908 (1955); Patalano v. Chabot, 139 Conn. 356, 359, 94 A.2d 15 (1952); Home Owners' Loan Corporation v. Stevens, 120 Conn. 6, 9–11, 179 A. 330 (1935).

13. Home Owners' Loan Corporation v. Stevens, supra note 12, at 10.

14. Amended Complaint of March 23, 1962, Second Count, paragraphs 18–20.

15. The Court believes it appropriate to construe the pleadings and the contract to which they are addressed in the light most favorable to plaintiff since he is seeking relief as subrogee and was not a party to the insurance contract which was entered into between Bankers Indemnity, on the one hand, and Harold & Shanen's Auto Service, Inc., through its president, director and principal stockholder (Shanen), on the other hand. The fact that plaintiff was not a party to the insurance contract would not appear to deprive him of standing to seek reformation here, in view of the provisions of Conn.Gen.Stat. § 38–175 (supra note 5) subrogating a judgment creditor to "all the rights" of an insured judgment debtor.

the parties to the insurance contract, or (b) unilateral mistake of one party coupled with fraud or other inequitable conduct of the other party.

The issues under the second count are relatively narrow:

(1) whether, prior to defendant's issuance of the written garage liability policy, there was in fact an antecedent agreement between defendant (or its authorized agent) and Harold & Shanen's Auto Service, Inc. (or its authorized agent) which did *not* exclude from coverage "any partner, employee, director, stockholder or additional insured with respect to any automobile owned by him"; and, if so,

(2) whether such antecedent agreement was not set forth, or was incorrectly set forth, in the written policy as issued *either* because of mutual mistake of the parties *or* because of unilateral mistake of one party coupled with fraud or other inequitable conduct of the other party.

*Policy Sought To Be Reformed*

The policy sought to be reformed originally was issued to Harold Lefflbine d/b/a Harold's Tydol Service Station, to be effective for a one year period beginning February 26, 1952. Subsequently, Harold & Shanen's Auto Service, Inc., successor to Harold's Tydol Service Station, was organized. On April 3, 1952 defendant issued an endorsement [16] to the policy originally issued to Harold Lefflbine d/b/a Harold's Tydol Service Station. The endorsement changed the named insured to Harold & Shanen's Auto Service, Inc., effective April 1, 1952. No other relevant change was made in the terms of the original policy as so endorsed. In effect, then, coverage was first provided Harold & Shanen's Auto Service, Inc. by an en-

dorsement of a policy originally issued by defendant to a separate entity; and it is the terms of the original policy, as endorsed to apply to Harold & Shanen's Auto Service, Inc. effective April 1, 1952, which plaintiff seeks to reform.[17]

*Plaintiff's Claims At Trial*

The substance of plaintiff's *claim* at the trial of the second count was that sometime in late March or early April of 1952, but before the above mentioned endorsement was issued by defendant on April 3, 1952, Shanen, as president and director of Harold & Shanen's Auto Service, Inc., had a conversation with one Chuck Klein, an employee of Insurance Consultants, Inc., an alleged agent of defendant, with regard to the issuance of liability insurance; that Klein agreed on behalf of defendant to issue a policy which would provide liability coverage for Shanen, among others, whenever he was operating automobiles which at least *sometimes* were used in connection with the business of Harold & Shanen's Auto Service, Inc.; and that Klein agreed in particular that the policy to be issued would provide such coverage for Shanen *whenever* he was operating a certain 1949 Chevrolet automobile (which subsequently was operated by Shanen at the time of the accident on December 26, 1952) notwithstanding that Shanen would retain legal title to the automobile, that no formal transfer thereof had been made to the corporation and that no transfer to the corporation would be made in the future. Plaintiff also *claimed* that, some time subsequent to this alleged conversation, Klein presented Shanen with an envelope of papers which Shanen never examined but which he assumed contained a policy providing the coverage Klein had promised; and that only after the accident did Shanen allegedly discover that coverage was provided by the endorsement of an earlier issued policy, rather than by issuance of a new policy, and that the policy ex-

16. "ENDORSEMENT #1" attached to Plaintiff's Exhibit 7.

17. Subsequent to the time here involved but prior to commencement of the Su-

perior Court action in November 1953, the name of the insured was again changed to Harold's Auto Service, Inc. Baptist v. Shanen, supra note 4, at 606.

*cluded* coverage of cars owned, *inter alia,* by a director or a stockholder of the named insured.

Shanen did testify at the trial substantially in accordance with plaintiff's claims outlined above. Such testimony was received by the Court, however, subject to plaintiff's establishing that there was authority on the part of Klein, as an agent of defendant, orally to bind defendant by such an agreement for issuance of a liability insurance policy,[18] as it is alleged he did during his conversation with Shanen in March or April of 1952. Such evidence was never forthcoming.

### Insufficient Evidence of Klein's Authority To Bind Defendant

For proof of the existence and terms of the alleged antecedent agreement for issuance of insurance, and of the authority of Klein to bind defendant with regard to such an agreement, plaintiff relied upon (1) an "Agency Agreement"[19] between Klein's employer, Insurance Consultants, Inc., and defendant dated June 25, 1951; (2) Shanen's testimony regarding three alleged conversations with Klein (one in late March or early April of 1952 when the alleged antecedent agreement was entered into, one shortly thereafter when the endorsement was delivered to Shanen, and one shortly after the accident); and (3) plaintiff's testimony regarding his alleged conversation with Shanen immediately after the accident and his alleged conversation with Harold Lefflbine, vice-president of Harold & Shanen's Auto Service, Inc., the following day.

■ By the terms of the Agency Agreement, defendant gave Insurance Consultants, Inc. authority only

"to receive and accept proposals for insurance covering such classes of risks as the Company [defendant] may, from time to time, authorize to be insured. * * * "

Even assuming that Klein were shown to have been an agent of Insurance Consultants, Inc.[20] and as such to have acted pursuant to the latter's authority under the Agency Agreement, authority "to receive and accept proposals for insurance" is not tantamount to authority to *issue,* or to *agree to issue,* any sort of insurance policy. Even the authority to *receive* proposals under the Agency Agreement is not unlimited; it is restricted to "such classes of risks as the Company may, from time to time, authorize to be insured."

In short, it is clear that the Agency Agreement was not intended to, and in fact did not, authorize Insurance Consultants, Inc., or its agents, to *issue,* or *agree to issue* any policy whatsoever. Rather, the Agreement was intended primarily to govern relations between the agent and the company once the *company* actually *approved* a proposal of insurance tendered to it by the agent, and in fact *issued* a policy of insurance; this is made clear by other provisions of the Agency Agreement such as those relating to collection and accounting of premiums on "insurance tendered by the Agent to and accepted by the Company", control of the agent's records and payment of commissions. Plaintiff's reliance upon the Agency Agreement to establish Klein's authority to bind defendant with regard to the alleged antecedent agreement for issuance of insurance is misplaced.

■ Nor is there any sound basis for plaintiff's reliance upon Klein's alleged implied authority to have agreed to give Shanen the coverage requested. In the first place, the only direct evidence that Klein did so agree came from the lips

---

18. See Baptist v. Shanen, supra note 4, at 610; Bailey v. Bobecki, 117 Conn. 653, 654, 166 A. 677 (1933).

19. Plaintiff's Exhibit 1.
At the beginning of the trial of the first count, it was stipulated by counsel that evidence taken at the trial of the first count would be considered also as evidence at the trial of the second count insofar as relevant and material.

20. The Agency Agreement was signed by two persons on behalf of Insurance Consultants, Inc., one of whom was designated "Jules J. Klein, Tres."

of Shanen, the alleged insured. (Statements by Shanen to Baptist immediately after the accident in December of 1952 to the effect that he, Shanen, was insured, and similar statements to Baptist the next day by Lefflbine, vice-president of the named insured, are hardly probative of the *authority* of Klein, almost a year earlier, orally to agree to issue on behalf of defendant a liability insurance policy as here alleged.) But even if Shanen's direct testimony regarding his conversation with Klein in March or April of 1952 were to be accepted, the Court is hard pressed to see how an *implication* from an alleged agent's conduct is sufficient to establish his authority, when *express declarations* by him to the same effect would be legally insufficient to establish his authority.[21]

Accordingly, the Court holds that plaintiff has failed to sustain his burden of proving that Klein was an agent of defendant authorized orally to bind defendant by an antecedent agreement for issuance of a liability insurance policy. Absent proof of such authority, any oral agreement Klein may have made with Shanen has no binding effect upon defendant. Without satisfactory proof of an actual agreement between defendant, or its authorized agent, and Harold & Shanen's Auto Service, Inc., or its authorized agent, prior to defendant's issuance to Harold & Shanen's Auto Service, Inc. (by endorsement effective April 1, 1952) of the written policy sought to be reformed, there is no basis for the relief sought; for absent prior agreement between the parties to the written policy, there is nothing in accordance with which the written policy may be reformed.

*Insufficient Evidence Of Existence And Terms Of Alleged Antecedent Agreement*

It may be noted in passing that even if plaintiff had established Klein's authority to bind defendant by the alleged antecedent agreement for issuance of a liability insurance policy, proof at the trial of the existence and terms of the alleged agreement was not sufficiently clear to warrant the Court's granting the equitable relief sought. Shanen testified that, during the crucial conversation in March or April of 1952, he told Klein on the one hand that the 1949 Chevrolet in question was "now property of the corporation", and on the other hand that "no legal papers or title [with respect to the Chevrolet] passed to the corporation." In response, Klein was alleged to have said he would "take care of the policy", that Shanen need not "worry about a thing" and that "everything would be alright." Of course, again assuming Klein's authority to bind defendant, if Klein understood from Shanen that the corporation "owned" the Chevrolet, the coverage requested would have been provided by the written policy as issued, the exclusion clause being irrelevant. In that case no mistake on Klein's part could be claimed; and there would be no basis for reformation.

Only on the supposition that Klein understood, based on his conversation with Shanen, that Shanen was still the owner of the Chevrolet (again assuming Klein's authority), would Klein's "assurances" be relevant to the present claim for relief. To sustain plaintiff's claim on this ground, however, it would be necessary to indulge in the prohibited drawing of cumulative inferences.

Accordingly, even if Klein's authority to bind defendant were established, the Court would be required to hold that plaintiff had failed to sustain his burden of establishing the existence and terms of such antecedent agreement with sufficient clarity to warrant granting the equitable relief of reformation here sought.

*Unnecessary To Reach Issue Of Mutual Or Unilateral Mistake*

The Court having held that plaintiff has failed to sustain his burden of prov-

---

21. Baptist v. Shanen, supa note 4, at 609–610; Bailey v. Bobecki, supra note 18, at 654; Metropolitan Cleaners & Dyers, Inc. v. Tondola, 114 Conn. 244, 246, 158 A. 240 (1932).

ing that Klein was an agent of defendant authorized to bind defendant by an antecedent agreement for issuance of a liability insurance policy and further that plaintiff has failed to sustain his burden of establishing the existence and terms of such antecedent agreement with sufficient clarity to warrant granting the equitable relief of reformation, it is not necessary for the Court to reach the second issue raised under the second count, namely, whether such antecedent agreement was not set forth, or was incorrectly set forth, in the written policy as issued through mutual mistake or through unilateral mistake coupled with fraud or inequitable conduct.

### CONCLUSION

The Court concludes that plaintiff is not entitled to reformation and orders that judgment enter in favor of defendant, with costs, on the second count of the amended complaint of March 23, 1962.