Charles N. BAPTIST, Plaintiff-Appellant,

v.

BANKERS INDEMNITY INSURANCE COMPANY, Defendant-Appellee.

No. 116, Docket 30100.

United States Court of Appeals Second Circuit.

Argued Nov. 15, 1966.

Decided April 19, 1967.

David S. Maclay, Bridgeport, Conn. (Marsh, Day & Calhoun, Bridgeport, Conn., on the brief), for plaintiff-appellant.

Philip R. Shiff, New Haven, Conn. (Adrian W. Maher, Bridgeport, Conn., on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and MEDINA and KAUFMAN, Circuit Judges.

MEDINA, Circuit Judge.

Charles N. Baptist appeals from a judgment entered in favor of Bankers Indemnity Insurance Company which he sued by way of subrogation to the rights of David Shanen, with whom Baptist was involved in an automobile accident. The damage claim was tried to the court and a jury and resulted in a verdict for defendant. There was also a count seeking reformation of the policy of insurance out of which Shanen's rights were said to have arisen. After the conclusion of the jury feature of the case the reformation count was tried to the court without a jury and this count was dismissed on the merits. The factual issue on the first trial was whether David Shanen was the owner of the car he was driving at the time of the accident. The jury found he was the owner and this led to judgment for Bankers Indemnity on the first count because cars owned by him and operated by him for his own business or pleasure were not covered by the policy. The opinion of Chief Judge Timbers, relating to the disposition of the reformation count, is reported at 245 F.Supp. 33.

Appellant's brief contains no narrative of the facts, chronological or otherwise. It is asserted that there are so many alleged errors "that it is impractical to take them up in any really logical order or even to cover all of them." Our study of the transcript and the exhibits, however, has enabled us to understand the chronological sequence of events and place the various matters of controversy in some reasonable relation to one another. Further consideration in the light of our factual survey disclosed that almost all the contentions of appellant were without merit. A few warrant brief discussion and this discussion will follow immediately after our chronological statement.

I

*Chronological Survey 1951–1962*

Long prior to the time Baptist was injured Harold Lefflbine owned, maintained and operated a small gasoline filling

station and automobile repair shop, known as Harold's Tydol Service Station, at 66 South Street in Stamford, Connecticut. Bankers Indemnity Company had issued its standard garage liability policy to Harold Lefflbine d/b/a Harold's Tydol Service Station, as the named insured, to be effective for a one-year period beginning February 26, 1952. This policy applied to all cars owned by or operated in the business and as agent of the named insured, but it plainly excluded coverage "to any partner, employee, director, stockholder or additional insured with respect to any automobile owned by him, or by a member of his household other than the named insured." In other words, if any partner, employee, director or stockholder owned a car and had an accident while operating that car in the business and as agent of the named insured the policy applied and Bankers Indemnity was required to defend an action brought against the named insured for damages arising out of the accident and to indemnify the named insured up to the amount provided in the policy or $25,000. But if such a person had an accident while driving his own car for his own pleasure or on business not connected with the filling station and repair shop, this person was not covered by the policy.

David Shanen, with some years of experience in gas service station operation, garage repair and auto wrecking, agreed to team up with Lefflbine. On April 1, 1952 a new corporation was formed with the name Harold & Shanen's Auto Service, Inc. Of the 30 shares of common stock 28 were issued to David Shanen, who was to become President and to pay for the stock with $1000 in cash and property of the value of $1500. The property was agreed to be two cars owned by David Shanen, a 1949 Chevrolet sedan purchased by him on August 1, 1951 and a Ford tow truck. As the affairs of the new corporation were conducted on an informal basis, there never was any legal transfer or bill of sale passing title to these two cars to the corporation. David Shanen's 17 or 18 year old son Al-

len was to have 1 share and he was made Secretary and Treasurer. Lefflbine also was to have 1 share and he was made Vice-President. The business was to operate the filling station and repair shop, also to buy and sell used cars.

Also on April 1, 1952 Bankers Indemnity issued its endorsement to Lefflbine's policy, changing the name of the insured to "Harold Lefflbine and David Shanen d/b/a Harold & Shanen's Auto Service, Incorporated." Otherwise the policy coverage and all its terms remained as before.

As Conn.G.S. Sec. 14–165 et seq. was not enacted until 1957 and there were no statutory provisions for certificates of title or automobile title registration, Lefflbine and David Shanen, in the name of the corporation, applied for and obtained a number of dealer's plates and one of these was affixed to the 1949 Chevrolet.

On December 26, 1952 while David Shanen was driving the 1949 Chevrolet he had a collision with a car driven by Baptist and Baptist was injured.

On December 27, 1952 Baptist filed his report of the accident with the Connecticut Department of Motor Vehicles stating that he was the owner and operator of his car and that "Dave Shanen" was the owner and operator of the Chevrolet bearing used dealer's License No. OA-39.

We then come to a period during which David Shanen seems to have disappeared. He was then separated from his wife, "was not at home and could not be located." The 1949 Chevrolet was at the filling station. So, according to appellant's counsel, the son Allen, "to protect his family's interest" and "acting on his own behalf" proceeded to make a deal with Lefflbine by which he "bought" the 1949 Chevrolet from Lefflbine, received a promissory note for $1000 and turned over the stock to Lefflbine. There was nothing to connect this transaction with David Shanen, nor is it claimed that any corporate action was taken. The trial judge properly rejected this evi-

dence. The wisdom of this course became apparent when the proof developed the fact that David Shanen promptly reappeared and "recovered" the 1949 Chevrolet from his wife. He later had a dispute with his wife over the car, but, as stated in appellant's brief, he prevailed "without going to court."

On January 14, 1953 David Shanen placed a chattel mortgage on the 1949 Chevrolet to secure a personal loan. In this transaction he, of course, represented he was the owner of the car. This was evidently done while his wife was still in possession of the car, as his statement of February 6, 1953 for Bankers Indemnity says his "former wife" still has it. In the same statement he says the car is "owned by Harold & Shanen's Auto Service, Inc. It belongs to the corporation. I was using my car for the business. * * * I don't believe the ownership was transferred. I wouldn't think it would have to be transferred back. I used the car when I was in the business. She uses it now."

On April 2, 1953 David Shanen settled for $24.16 his claim for damage to the 1949 Chevrolet in the accident on December 26, 1952 with Motors Insurance Corporation representing the collision insurance carrier that had issued a policy in connection with the conditional sale contract with David Shanen at the time he bought the 1949 Chevrolet in 1951. While this settlement was made on April 2, 1953 it was obviously based on a claim that David Shanen owned the 1949 Chevrolet on December 26, 1952, the date of the accident as recited in the document, Exhibit 16.

On April 24, 1953 David Shanen signed what is probably the most important document in the case. It is his report of the accident to the Connecticut Department of Motor Vehicles. This report is typewritten and sworn to before Alphonse C. Jachimczyk, a Commissioner of the Superior Court. In this report David Shanen states that he was the owner of the 1949 Chevrolet involved in the collision of December 26, 1952 with Baptist. David Shanen testified he consulted with Jachimczyk when preparing the report and that, although Jachimczyk was a lawyer he consulted him as a friend.

As part of this accident report is a detachable sheet, described as S. R. 21, in which the person making the report is required to set forth data concerning any insurance carried by him. David Shanen included the name of the insurance company and the number of the policy. This S. R. 21 was sent by the Commissioner to the insurance company with a request that it be returned in 15 days "if no policy was in effect as alleged." There are 6 little boxes to be checked as follows:

With regard to an automobile liability insurance policy for the policyholder named on the reverse side hereof, the undersigned insurance company advises you in accordance with the items checked below.

1. No policy was in effect on the date of accident.

2. Our policy for the named policyholder applies to him as the operator but it does not apply to the owner of the vehicle involved in the accident.

3. Our policy applies to the owner of the vehicle, but does not apply to the operator of the vehicle involved in the accident.

4. Our policy affords bodily injury coverage only.

5. Our policy affords property damage coverage only.

6. Our policy affords limits of liability less than $20,000/20,000 bodily injury and $1,000 property damage (indicate actual limits under remarks).

The form itself was excluded as it contained the self-serving statement by David Shanen that he was insured. While the trial judge might well have received in evidence a copy of the S. R. 21 as above set forth, we think it was not an abuse of discretion to receive in evidence in lieu of the document itself certain of Baptist's requests for admissions

and the answers thereto. These in effect admitted Bankers Indemnity received the form and did not return it to the Commissioner within the required 15 days, nor did it in any way indicate to the Commissioner that David Shanen was not covered "for said accident" or that there might be a question about such coverage. The reason given was: "The advice sought by the Commissioner of Motor Vehicles on SR 21 form did not apply to this situation." In other words, the claim of Bankers Indemnity was that none of the six statements above set forth applied clearly to the circumstances of this case.

The trial judge properly ruled that this did not establish a liability by estoppel against the insurance company. While we perceive no reason not to have received the original document in evidence, or at least a copy of the blank S. R. 21 form, we find no reversible error as the substance of what occurred was before the jury.

"On the last part of April," 1953 David Shanen sold the 1949 Chevrolet to pay off his chattel mortgage loan. And, on May 6, 1953 David Shanen wrote out another statement for Bankers Indemnity "to supplement" his prior statement of February 6, 1953. In this May 6, 1953 statement he writes: "I own the car and I owned it on 12-26-52. I sold the car to Conn. Motor Exchange. I sold it about a week ago. My wife and I had a discussion over who owned the car but I proved title without going to court and she relinquished her claim. I always owned that Chevrolet ever since I bought it about a year and a half ago, maybe two years ago."

On November 27, 1953 Baptist commenced an action in the Fairfield County Superior Court of Connecticut against David Shanen and Harold's Auto Service, Inc., formerly known as Harold & Shanen's Auto Service, Inc., to recover damages for the personal injuries suffered by him in the December 26, 1952 accident. It appeared at the trial of the present action in the federal court that at the time of the commencement of the

Connecticut state action and at the trial of that action Baptist was not aware of the terms of the policy issued by Bankers Indemnity. In any event, while the complaint did not in specific terms allege the ownership of the car, it did describe it as "his" with reference to David Shanen, and the claim against the corporation was based upon an allegation that at the time of the accident David Shanen was operating "his" automobile as the agent of the corporation.

Bankers Indemnity provided counsel who appeared and defended the corporation. A default was noted against David Shanen on March 12, 1954 but the damages were not assessed until later.

In a deposition taken in the state action on November 15, 1954 David Shanen testified:

Q. I see. And this was your own privately-owned automobile? A. That's right.

Q. Is that right? A. That's right.

Q. Absolutely no question about that? A. Not when I purchased it, no, sir.

Q. And—well, at any time did you ever transfer it to the corporation? A. No, it was never—no legal transfer.

Q. I see. And you loaned it to the corporation? A. That's right.

Q. You say. A. That's right.

Q. At all times from the date that you purchased the car, in August of 1951, August 1st, until some time after the accident of December 26, 1952, this car was owned solely by you, is that right? A. That's right.

The state court case came on for trial before Shapiro, J. and a jury on June 13, 1957. David Shanen did not testify and he was not present at the trial. The upshot was that Baptist testified David Shanen told him immediately after the accident, "It's all my fault, Mister * * * I'm * * * drunk." He told Baptist further that "he was out trying to do some business with the boys * * * you know my line of business. I sell cars, buy and sell cars." When Baptist

asked him "How come you're drunk?," David Shanen replied, "I have to take a few drinks with the boys." As David Shanen's declarations were not competent to establish agency and as all efforts to corroborate his statement were unavailing, the claim against the corporation was dismissed, the Bankers Indemnity lawyers withdrew, and default damages were assessed against David Shanen for $45,000. Baptist's motion for a new trial against the corporation was denied and the rulings below were unanimously affirmed by the Connecticut Supreme Court of Errors on November 4, 1958. Baptist v. Shanen, 145 Conn. 605, 145 A.2d 592.

In the state action no claim was made by Baptist that the corporation owned the 1949 Chevrolet. Nor was such a claim asserted in the original complaint in this action for subrogation under Conn.Gen.Stat. Sec. 38-175 (1958) [1]. This claim was first asserted in Baptist's amended complaint in this action on January 9, 1962, after Bankers Indemnity had pleaded in its answer to the original complaint that the policy did not insure the liability of David Shanen with respect to the operation of the car owned by him.

The two counts of the complaint were tried separately. The first, involving the issue of whether or not David Shanen was the owner of the 1949 Chevrolet was tried to the court and jury. The second, or reformation count, was tried to the court without a jury. The first trial resulted in a verdict for defendant insurance company; the second trial resulted in a dismissal of Baptist's complaint on the merits.

Various additional facts and circumstances will be discussed in connection with a number of law points to which we now turn our attention.

## II
### *The Law Points*
#### A

In limine lies the claim of Bankers Indemnity that the complaint should have been dismissed on the grounds of *res adjudicata*, estoppel and laches. These defenses were ruled out as insufficient in law by Judge Anderson and again by Chief Judge Timbers. Despite the adjudication in the state court and the lapse of time before the bringing of this suit, we agree with the disposition of these defenses below. The principal reason for this conclusion is that at the time of the commencement of the state action and for a long time thereafter Baptist had no knowledge of the terms of the policy issued by Bankers Indemnity or its predecessor insurance company. Moreover, it is highly questionable whether the ownership of the 1949 Chevrolet was in any substantial sense one of the issues decided in that case. Baptist would have been entitled to recover against David Shanen for injuries caused by his negligence as the operator of the 1949 Chevrolet no matter who was its owner. By the same token, Baptist would have been entitled to recover against the corporation if David Shanen was found to have been acting as the agent of the corporation, wholly irrespective of the ownership of the car.

#### B

Baptist's main point is that he should have been allowed to prove the "use"

and "maintenance" of the 1949 Chevrolet by the corporation as proof of what his counsel calls "substantial" or "de facto" ownership. Having found the words "use" and "maintenance" in various miscellaneous clauses of the policy having no bearing whatever on the meaning of clause [b] under the heading of "Definition of Assured," quoted above, which clearly controls the case, counsel for Baptist conceived the theory that proof that the car was "used" in the business of this filling station repair shop and dealer in second-hand cars, and that the corporation supplied some or all of the gas and oil used by the car, was relevant and admissible because the policy was ambiguous. However, the trial judge decided the policy was not ambiguous and the proof was excluded. Counsel then shifted to the theory that this proof was admissible to prove that the corporation owned the 1949 Chevrolet. The result was that, despite numerous rulings that proof of "use" and "maintenance" of the car was not admissible, much of this evidence got into the record and was before the jury. The following statements by David Shanen will suffice to illustrate: he "loaned" the car to the corporation; he let the corporation have the use of the car; "I used the car when I was in the business"; and "I was using my car for the business."

It was under these circumstances that the following instructions to the jury were given, to which counsel for Baptist took no exception:

Thus, you can see that the meaning of the word "ownership" and of the related words "own" and "owner" may depend upon the context in which the word is used. For the purposes of the present case, "legal title" of the automobile involved is not the sole criterion of ownership; also relevant are the purpose for which the automobile was purchased, for whose benefit it was intended to be used, and how it was in fact used. And with respect to such actual use, the questions of: who had possession and control of the car, who was responsible for its maintenance and operation, and who, in general, exercised dominion over the car, are also relevant. In this connection, I charge you that since Harold & Shanen's Auto Service, Inc., is a corporation, it can act only through its officers, agents, or employees.

■ As will appear shortly, these instructions were more favorable to Baptist than he was entitled to. Moreover, his motion to reopen the case was properly denied.

■ And so we hold:

(1) The terms of the policy were clear and wholly without ambiguity. The simple issue for the jury to determine was whether on December 26, 1952 David Shanen, concededly a director and stockholder of the named insured, was the owner of the 1949 Chevrolet.

(2) In this action by way of subrogation, governed by the terms of the policy, proof of the use or maintenance of the car, whether it had been displayed "for sale" in the corporation's used car space, and who miscellaneous persons thought owned the car, was irrelevant and not admissible. Here the policy as a whole was designed to effect a broad coverage as would be necessary for a garage and used car lot with various automobiles and drivers moving in and out of the business. But the insurer had no intention of permitting the officers and employees of the policyholder to bring their personal vehicles under the protection of the business policy by merely associating them on occasion with the garage. That would permit intolerable abuse. The function which the exclusion clause was to serve was to distinguish automobiles owned by directors, shareholders and employees from all other automobiles which might come in contact with the business. Therefore, regardless of who used or maintained an automobile which was owned by a director, shareholder or employee, the vehicle was not covered by the policy unless at the time of the accident it was being operated in the business and by an agent of the named in-

sured. Thus, to permit ownership to be proved by use would wholly emasculate a clause that on its face served a function by way of contrast to use.

Avery v. Clemons, 18 Conn. 306 (1847) and Sagnella v. Central Mfrs. Mutual Ins. Co., 10 Conn.Supp. 288 (Super.Ct. 1941), upon which Baptist relies, hold nothing to the contrary. The combination of circumstances giving rise to disputed issues of ownership of personal property and difficulties of proof amply justify resort at times to use, maintenance and the exercise of dominion over certain chattels. Thus in *Avery* such proof was held admissible in an action of trover arising out of a third party claim in an attachment proceeding. The controversy in *Sagnella* arose out of claims under a fire insurance policy of ownership of miscellaneous articles used to service an inn.

What controls the case before us are the terms of the garage liability policy and the nature of the business of the named insured, the corporation Harold & Shanen's Auto Service, Inc. Ownership under the terms of this policy does not mean mere use, maintenance or possession.

Thus, immediately after the portion of the instructions quoted above, the trial judge charged:

In the last analysis, you should determine ownership of the automobile here in question in the light of the purpose for which the word was used in the exclusion clause of the insurance policy here involved. In other words, did David Shanen own the automobile at the time of the accident from the standpoint of excluding coverage of that automobile under this policy?

More specifically: do the indicia of ownership of this automobile existing at the time of the accident, December, 1952—such "indicia of ownership" having been defined by the Court— make it reasonable to conclude that David Shanen was, or was not, the owner of the automobile under the terms of the policy?

In order to make this determination, you may take into account all of the evidence, including representations made by Shanen himself, to the public authorities and in legal proceedings under oath.

C

Baptist complains that the burden of proof of ownership of the car was placed on him rather than on the insurer. But this very point of Connecticut law was resolved in favor of the insurer by our decision in Preferred Accident Ins. Co. of N. Y. v. Grasso, 186 F.2d 987, 23 A. L.R.2d 1234 (2 Cir. 1951). We find no error here.

■■ The following instructions on the subject of the presumption arising out of the use of the dealer's plates were also correct:

In connection with the issue of ownership, you will recall there was evidence from which you could conclude that at the time of the accident there were affixed to the automobile operated by Shanen registration plates belonging to Harold & Shanen's Auto Service, Inc. If you do conclude that the corporation's plates were on the car at the time of the accident, the following instruction becomes relevant:

If an automobile dealer's registration plates are affixed to a motor vehicle, they constitute prima facie evidence of the ownership of that vehicle by the dealer to whom those plates were issued. Such prima facie evidence is sufficient to support a finding of ownership, in the absence of evidence which rebuts such evidence. On the other hand, if you conclude that other evidence establishes that Shanen was the owner of the automobile, thereby rebutting the prima facie evidence of ownership in the corporation by virtue of the registration plates, then such prima facie evidence would no longer be sufficient, in itself, to support an ultimate finding that the corporation owned the automobile.

The ultimate burden of proving by a preponderance of evidence that David Shanen did not own the car involved here, and therefore, that said car was covered by the insurance policy involved in this case, rests upon plaintiff.

The rules governing subrogation suits under Conn.G.S. Section 14–165 et seq. also control the admissibility of certain evidence, such as David Shanen's report of the accident and his testimony by deposition in the state case. Baptist merely stands in Shanen's shoes, as the expression is, and the case is treated as though Shanen had paid the judgment and was suing to recover on the insurance company's indemnity agreement. Such subrogation statutes are not intended to alter the balance between the insured and the insurer. They merely give an unsatisfied judgment creditor the rights of the insured and no more. If the rule were otherwise it would open up undesirable avenues of collusion between judgment creditors and debtors to the prejudice of insurance companies. This principle is inherent in our decision in *Grasso* above referred to. Baptist is the statutory transferee of a cause of action and admissions of the transferor in analogous circumstances have always been admissible against the transferee. In re Weissman, 19 F.2d 769, 53 A.L.R. 644 (2 Cir. 1927); Howard v. Cobb, 3 Day 309 (Conn.1809).

### D

There was no error in the refusal to permit Allen Shanen to testify to the conversations that took place at the time of the organization of the corporation. One of the basic facts in the case was that David Shanen was to transfer to the corporation his 1949 Chevrolet as part consideration for his 28 shares of stock. It is clear that no legal transfer was ever made, by bill of sale or otherwise. Such was the uncontradicted testimony of David Shanen and paragraph 5 of Baptist's amended complaint alleged "although the transfer to it had never been confirmed in writing."

If Allen's testimony was to be to the same effect it was not only cumulative but wholly unnecessary. If, however, in view of the marital dispute between David Shanen and Allen's mother and the alleged shuttling of the 1949 Chevrolet back and forth during the unexplained absence of David Shanen after the accident, some other version of the transaction was to be testified to by Allen Shanen it is abundantly clear that this would only add to the general confusion. It was a proper exercise of judicial discretion to sustain the objections.

### III

So much of the judgment appealed from as dismisses the reformation count on the merits is affirmed on the opinion below. Baptist v. Bankers Indemnity Insurance Co., 245 F.Supp. 33 (1965).

Affirmed.

LUMBARD, Chief Judge (concurring).

I join in the majority opinion, except parts (II) (B) and (D). Since Connecticut did not require automobile title registration in 1952, evidence as to the use of the automobile and as to its alleged informal transfer to the corporation seems to me admissible to show that the automobile was not excluded from coverage on the ground that David Shanen "owned" it. I agree with the majority that evidence that an automobile was occasionally used in the corporation's business would not suffice to show that the corporation owned it; but this does not mean that evidence of use is inadmissible.

I concur in the result, despite my belief that evidence of transfer to and use by the corporation was admissible, because, as the majority points out, the record shows that the substance of David Shanen's testimony regarding both was before the jury.