**LYKES BROS. STEAMSHIP CO., Inc.**

v.

**The UNITED STATES.**

No. 594–71.

United States Court of Claims.

May 12, 1972.

J. Alton Boyer, Washington, D. C., for plaintiff. Odell Kominers, Washington, D. C., attorney of record. Michael Joseph, Marcus B. Slater, Jr., and Kominers, Fort, Schlefer & Boyer, Washington, D. C., of counsel.

Robert N. Ford, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant. R. W. Koskinen, Washington, D. C., of counsel.

John T. Koehler filed a brief for Hudson, Creyke, Koehler, Brown & Tacke, Washington, D. C., as amicus curiae. John P. Wiese, Washington, D. C., was with him on the brief.

Gilbert A. Cuneo filed a brief for Sellers, Conner & Cuneo, Washington, D. C., as amicus curiae. Robert L. Ackerly, Washington, D. C., was with him on the brief.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## ON PLAINTIFF'S REQUEST FOR REVIEW OF COMMISSIONER'S ORDER DENYING MOTION TO MODIFY PRETRIAL ORDER

COWEN, Chief Judge.

This case is one of many recently transferred from the United States Tax Court pursuant to Public Law 92–41 § 3, 85 Stat. 97, 98 (1971). That statute amended the Renegotiation Act of 1951, 50 U.S.C. App. § 1211 et seq. (1970), to vest this court with exclusive jurisdiction to redetermine excessive profits determined by the Renegotiation Board. The case is presently before the court on plaintiff's request for review of a pretrial order by Commissioner George Willi. The order places upon plaintiff the burdens of proceeding with the evidence and of persuading this court that it "did not realize excessive profits in any amount greater than it concedes." As explained below, we have decided to apply a different evidentiary rule.[1] Accordingly, we vacate the commissioner's order and remand the case for further proceedings consistent with this opinion.

### I

On November 2, 1971, the commissioner filed in the present case a pretrial order which directed plaintiff, and thereafter defendant, to file certain specified submissions and responses aimed at more fully delineating the issues to be tried. The order directed that the first submission, by plaintiff, include plaintiff's version of its income statement, segregating its renegotiable from its nonrenegotiable business for the year involved, as well as certain balance sheet information. The order further required that plaintiff's initial submission set forth each proposition of law and related proposition of fact, together with an explanation of its evidentiary basis, upon which plaintiff intends to rely to prove that its profits were not excessive. The required propositions would include specific references to the so-called "statutory factors," 50 U.S.C. App. § 1213(e) (1970), which must be considered in determining excessive profits.

Plaintiff did not object to the requirement that it proceed first by submitting its income statement and balance sheet data, just as it had done in the proceedings before the Renegotiation Board. However, plaintiff moved that the commissioner delete from his order the requirement that plaintiff proceed first

---

1. Our task in formulating this rule has been facilitated substantially by the parties and the two amici curiae, whose briefs have been helpful. In addition, we have been aided by the comments of Charles M. Bruce, Esq. (Reform of the Renegotiation Process in Governmental Contracting, 39 Geo.Wash.L.Rev. 1141 (1971)), Professor Dennis S. Aronowitz (Practices and Procedures Under the Renegotiation Act of 1951, February 25, 1970 (study prepared for the Administrative Conference of the United States)), and John T. Koehler, Esq. (Renegotiation: Evidence and Burden of Proof in Appeal Proceedings, 45 Va.L.Rev. 1 (1959)).

with submissions to the effect that it realized no excessive profits. Plaintiff's position was that such submission should be made by way of reply to defendant's submissions. On December 17, 1971, the commissioner issued another order, denying plaintiff's motion and placing upon it the burden of going forward, as well as the burden of persuasion, on the main issue. It is plaintiff's contention here, as it was before the commissioner, that his orders give legal effect and a presumption of validity to the decision of the Renegotiation Board, a result which plaintiff asserts is wholly inconsistent with the statutory directive that the suit here "shall not be treated as a proceeding to review the determination of the Board, but shall be treated as a proceeding de novo." 50 U.S.C. App. § 1218 (1970), as amended, Pub.L. No. 92–41, 85 Stat. 97 (1971).

In dismissing plaintiff's contention that the burdens of persuasion and proceeding with the evidence should realistically be placed upon the defendant, the commissioner relied on the fact that Congress has never chosen to override the Tax Court's consistent practice of imposing on the contractor, except in certain limited circumstances, both evidentiary burdens. Noting isolated language from the congressional committee reports accompanying the legislation which transferred jurisdiction in renegotiation cases to this court,[2] and the rule of statutory interpretation that Congress is presumed to be aware of settled judicial construction, the commissioner discerned an identifiable congressional intent that the transfer of jurisdiction would result in nothing less than "total substantive continuity," including continuation of the same "litigating ground rules" between past proceedings in the Tax Court and future proceedings in the Court of Claims. On this basis, the commissioner concluded that while plaintiff's argument was "not without conceptual appeal when considered as an original proposition," it was foreclosed by the prior practice in the Tax Court.

 We find nothing in the legislative history of the 1971 statute which requires us, in effect to incorporate the Tax Court's procedures into our own. As we read Congress' intent, as evidenced especially by its first consideration of the judicial "review" provisions of the Renegotiation Act, Congress left matters of procedure and burdens of proof wholly to judicial resolution.

Statutory renegotiation came into the law in 1942, when Congress required the inclusion of renegotiation clauses in contracts in excess of $100,000.[3] The provisions for judicial proceedings were added in 1944, as part of an extensive revision of the renegotiation process.[4] In addition to providing for a de novo determination in the Tax Court, the Act also consolidated the renegotiation activities of the various departments, by creating the War Contracts Price Adjustment Board, and, for the first time, attempted to define "excessive profits" by delineating statutory factors.

The provision for a de novo determination originated in the House Ways and Means Committee in 1943. Its purpose, as explained by that Committee's report,[5] was as follows:

> Under existing law there is no right of appeal or review whereby the contractor may have the question of his excessive profits redetermined.

\* \* \* \* \* \*

---

2. See H.R.Rep. No. 92–235, 92d Cong., 1st Sess. 7 (1971); S.Rep. No. 92–245, 92d Cong., 1st Sess. 7 (1971):
"*As in the case of the present proceeding before the Tax Court*, the proceeding in the Court of Claims is not to be treated as a proceeding to review the determination of the Renegotiation Board, but is to be a de novo proceeding." (Emphasis by the commissioner.)

3. Section 403 of the Sixth Supplemental National Defense Appropriations Act, Act of April 28, 1942, 56 Stat. 244.

4. Section 701 of the Revenue Act of 1943, Act of Feb. 25, 1944, 58 Stat. 78.

5. H.R.Rep. No. 871, 78th Cong., 1st Sess. 76–77 (1943) (Emphasis added.)

Any contractor or subcontractor who feels aggrieved by an order of the Board (a unilateral determination) determining an amount of excessive profits received or accrued by the contractor, or by such an order of the Secretary in determining a fair price, within 90 days after the entry of such order or unilateral determination, may file a petition with The Tax Court of the United States for a redetermination of such profits. That court will have exclusive jurisdiction, by an order, to make a final determination as to whether excessive profits have been received or accrued, or whether a fair price has been determined, and The Tax Court's determination may not be reviewed or redetermined by any other court or agency. The court may determine an amount less than the amount determined by the Board or by the Secretary, as the case may be, or equal to or greater than the amount so determined.

The proceeding before The Tax Court shall not be treated as a proceeding to review the determination of the Board or Secretary, but shall be a proceeding de novo. Thus the court may adduce any evidence which it sees fit in making its determination. *It is provided that the contractor or subcontractor, as the case may be, is to have the burden of going forward with the evidence, whether as to the existence of excessive profits or as to the amount thereof. The burden of proof, however, may be upon the Government or the contractor or subcontractor according to the court's determination.*

The italicized language of the report would seem to indicate that the Committee intended that the contractor would have the burden of proceeding with the evidence, but that the court would be free to decide for itself which party would have the ultimate burden of persuasion. However, notwithstanding the Committee's statement that the will "provided" for these evidentiary rules, when the bill was reported to the floor of the House there was in fact no such provision.[6] We are left, then, without any clear indication of the Committee's actual intent. It may be, for example, that the Committee had tentatively considered a provision on evidentiary burdens, but ultimately decided that the matter was more properly within the province of the court. In any event, we think there is sufficient indication that, by the time the bill was finally enacted, Congress as a whole had decided to leave these matters to the court.

During the course of the Senate hearings on the bill, it developed that the Treasury Department was strongly opposed to placing jurisdiction over redetermination proceedings in the Tax Court, since it felt that the additional workload might overburden that court.[7] The Senate Finance Committee acquiesced in the Department's opposition and proposed an amendment which the Senate later adopted providing that jurisdiction be vested in the Court of Claims.[8] Nothing in the Senate bill or in the Finance Committee's report referred to how the Court of Claims should allocate the burdens of proof.

Subsequent to the Senate's adoption of the Finance Committee bill,[9] the conference committee reinstated the House language which lodged jurisdiction in the Tax Court. Its report,[10] in contrast to the earlier Ways and Means Committee report, did not discuss the questions of where the burdens of persuasion and proceeding with the evidence were to be placed. In explaining the conference committee's intent to the members of the House, Representative Disney dis-

---

6. H.R. 3687, 78th Cong., 1st Sess., as reported November 18, 1943.

7. Hearings on H.R. 3687 before the Senate Committee on Finance, 78th Cong., 1st Sess. 49 (1943).

8. S.Rep. No. 627, 78th Cong., 1st Sess. 34, 109 (1943).

9. 90 Cong.Rec. 543 (Jan. 21, 1944).

10. H.R.Rep. No. 1079, 78th Cong., 2d Sess. (1944).

cussed the provisions for judicial proceedings as follows:

## COURT REVIEW

The house bill provided for review of determinations of excessive profits in the Tax Court of the United States. The bill as passed by the Senate provided for review in the Court of Claims. The conference report adopts the provisions of the House bill in this respect.

Under the bill, both as passed the House and Senate, the review is required to be treated as a de novo proceeding in which all questions of fact and law may be decided. The conference reports makes no change in this regard, but *it may be noted that under the power of The Tax Court to prescribe rules governing its hearing and disposition of these cases, The Tax Court will have control of the question of what must be stated in the petition for review if the court is to entertain the petition. In short, the court may require the petitioner to state some cause of action.*[11]

If the conference committee had intended to place either the burden of persuasion or the burden of proceeding with the evidence on the contractor, it seems highly unlikely that the committee would have noted merely that the Tax Court "may" require the contractor to state "some" cause of action. Indeed, the statement that the Tax Court "will have control" over what an aggrieved contractor must state in his petition (and, implicitly, what he must later prove at trial) indicates to us that Congress took no position on questions of judicial procedure and burdens of proof. Rather, we think that the legislative history demonstrates that Congress left those matters to the discretion of the court.

The defendant has asked us to consider, as relevant to the question of Congress' intent regarding evidentiary burdens, a proposed amendment to the 1968 extension of the Renegotiation Act which would have altered the Tax Court's practice of placing both the burden of persuasion and the burden of proceeding with the evidence on the contractor. The amendment, introduced on the Senate floor, provided that if the contractor submits to the Board a statement of the grounds on which he relies to establish that his profits were not excessive, then the burden of introducing evidence relating to the statutory factors would be placed upon the Government if the contractor sues in the Tax Court. But as the amendment's cosponsor explained, "[t]he ultimate burden of proving that profits are not excessive would, however, still remain on the contractor."[12]

The defendant asserts that this statement, and the fact that the proposed amendment was rejected, reinforce its argument that Congress intended the contractor to shoulder the burden of proof in a redetermination proceeding. We draw no such inference from the Senate action in 1968. The discussion of the proposed amendment was in the context of the then existing Tax Court practice, and was in no way addressed to the question of whether that practice was contrary to the intention of Congress in passing the Renegotiation Act. Moreover, the Senate's rejection did not result from its disagreement with the merits of the proposal. Indeed, every member who commented agreed that some change in the Tax Court's practice was desirable. The ground of opposition was that there was then pending a staff study requested by the House Ways and Means Committee which would deal with the question of burden of proof, and that the matter should therefore be deferred. Thus, even if we could properly rely on a Congressman's interpretation of a statute enacted dur-

---

11. 90 Cong.Rec. 1355 (Feb. 7, 1944) (Emphasis added).

12. 114 Cong.Rec. 26420 (Sept. 11, 1968).

ing a prior Congress,[13] we find nothing in the discussion of the 1968 proposal which supports this argument by defendant.[14]

Finally, we turn to the legislation which transferred jurisdiction over redetermination proceedings to this court. As mentioned above, the commissioner held that the 1971 statute requires us to follow the Tax Court's practice of placing upon the contractor both the burden of persuasion and the burden of proceeding with the evidence. In part, the commissioner relied on the following language contained in the committee reports:

> *Explanation of provision.*—The bill provides that petitions for redeterminations of excessive profits determined by the Renegotiation Board are to be filed with the U. S. Court of Claims, and that the Court of Claims is to have exclusive jurisdiction to determine the amount of excessive profits received or accrued by a contractor or subcontractor in these cases. The Court of Claims may determine that the amount of excessive profits is less than, equal to, or greater than the amount determined by the Board.
>
> *As in the case of the present proceeding before the Tax Court,* the proceeding in the Court of Claims is not to be treated as a proceeding to review the determination of the Renegotiation Board, but is to be a de novo proceeding. In other words, in excessive profits redetermination cases

there is to be a full de novo court trial in the Court of Claims. * * * [15]

We cannot agree with the commissioner's view that the italicized language leads to the conclusion that Congress intended to preserve the Tax Court's burden-of-proof rules. Only by an overly strained interpretation of the committees' statements could one glean anything more than a mere explanatory declaration that the proceedings here will be de novo, as were the proceedings in the Tax Court. Moreover, other language of the reports could be strained to reach a conclusion *opposite* to the commissioner's. For example, the report states that "the procedures normally followed in the Court of Claims are believed to be better suited to the process of renegotiation than those which generally prevail in a Tax proceeding." [16] Taken out of context, one might conclude from this statement that Congress *expected* us to change the "litigating ground rules" preserved by the commissioner.

The commissioner also relied on the familiar rule of statutory interpretation that the reenactment of a statute without material change constitutes an implied congressional ratification of a prior administrative or judicial construction. Finding that by 1971 "the question of the contractor's burden in [a redetermination] proceeding had become firmly anchored by a long and unbroken series of judicial pronouncements," the commissioner held that since Congress

13. *See, e. g.,* United States v. Wise, 370 U.S. 405, 411, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962) ; United States v. United Mine Workers, 330 U.S. 258, 281–282, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

14. A similar situation occurred when the Renegotiation Act was extended in 1959. Pub.L. No. 86–89, 73 Stat. 210 (1959). The House bill contained a provision that the contractor bear the burden of proceeding with the evidence in the Tax Court. The provision was deleted by the conference committee, whose report admonished that no inference should be drawn from any deletions made by that

committee, H.R.Rep.No. 619, 86th Cong., 1st Sess. (1959).

15. H.R.Rep. No. 92–235, 92d Cong., 1st Sess. 7 (1971) ; S.Rep. No. 92–245, 92d Cong., 1st Sess. 7 (1971) (emphasis added).

16. H.R.Rep. No. 92–235, 92d Cong., 1st Sess. 6 (1971) ; S.Rep. No. 92–245, 92d Cong., 1st Sess. 7 (1971). The statement was made with reference to the fact that this court's procedures are designed for prolonged litigation, which characterizes renegotiation cases, while the Tax Court's procedure of assigning to each judge a calendar of cases does not easily accommodate such litigation.

showed no inclination to overrule these cases when it shifted jurisdiction to this court, Congress must have intended that we follow them.

We do not agree that the Tax Court's burden-of-proof rules are as firmly imbedded as the commissioner held; even if they were, we think that the commissioner's reliance on the reenactment doctrine was improper. This is not a case where the Tax Court has construed ambiguous statutory language. Rather, the Tax Court exercised its discretion to formulate its own rules governing redetermination proceedings. Moreover, the Tax Court had authority under the 1944 Act to change its procedural rules at any time, so long as it did not otherwise violate the statutory requirements. Under these circumstances, it would be difficult to infer that Congress impliedly intended to extinguish that authority when it transferred jurisdiction to this court in 1971.[17] Such an interpretation would not only alter the meaning of the 1944 Act, but it would also infringe our inherent and statutory power to regulate our own procedures.[18]

We conclude then that the Renegotiation Act, as well as the 1971 legislation transferring jurisdiction of the cases to this court, left to judicial resolution the allocation of the burden of proof. Of course, we are not unmindful that the Tax Court, in exercising the discretion granted it by the Act, has consistently placed these burdens on the contractor. And, in several cases, contractors who attacked this practice in the circuit courts of appeals were unsuccessful. However, with deference to the Tax Court, we feel that a different rule is

more consistent with the provisions of the Act.

Unlike the usual rule in a tax case, where the burden of proof is placed upon the taxpayer because the Commissioner's determination is presumptively correct, no presumption of correctness attaches to an order of the Renegotiation Board. The Renegotiation Act expressly states that a judicial redetermination "shall not be treated as a proceeding to review the determination of the Board, but shall be treated as a proceeding de novo," and that the Board's order determining excessive profits, and its accompanying statement of facts and reasons, "shall not be used in the Court of Claims as proof of the facts or conclusions stated therein." 50 U.S.C. App. §§ 1218, 1215(a) (1970), as amended, Pub.L. No. 92-41, 85 Stat. 97 (1971). Consequently, we decline to follow Nathan Cohen v. Secretary of War, 7 T.C. 1002 (1946), in which the Tax Court applied the rules promulgated for tax cases to a redetermination proceeding, and held that the contractor's failure to prove the incorrectness of the Secretary's determination of excessive profits required a finding that excessive profits were realized in the amount determined by the Secretary. This holding followed from the application of Rules 32 and 64 of the Tax Court's Rules of Practice, the former rule placing upon the petitioner the burden of proving the allegations pleaded in his petition, and the latter rule requiring in part that the petitioner in a renegotiation case set forth in his petition detailed assignments of error alleged to have been committed in the administrative determination of excessive profits.[19] The Court of Claims has no

---

17. Compare, Helvering v. Wilshire Oil Co., 308 U.S. 90, 100, 60 S.Ct. 18, 84 L.Ed. 101 (1939).

18. See 28 U.S.C. § 2071 (1970).

19. It should be noted that the Tax Court's holding in Nathan Cohen was clarified in Grumman Aircraft Engineering Corp. v. Renegotiation Board, 52 T.C. 152 (1969) where the court stated: "The contractor's burden of proof is not the burden to overcome any presumption of cor-

rectness of the Board's order. It is the usual burden resting on one who files the action to go forward with the evidence to sustain his allegations by proof." Id. at 154. Also it seems that the Cohen rule was relaxed somewhat in Page-River-Curran v. Renegotiation Board, 55 T.C. 1153, (1971), where the court suggested that the burden of proof might shift to the Government at some time during a redetermination proceeding.

rule applicable to renegotiation cases which is comparable to the Tax Court's Rule 64.[20]

We have also carefully examined the several circuit court opinions to which we referred above, but we find nothing which affects the question of which party should bear the burden of proof in this court. In Golbert v. Renegotiation Board, 254 F.2d 416 (2d Cir. 1958), the Court of Appeals affirmed the Tax Court's application of Rule 32 in its determination whether the petitioner there was an employee or a "subcontractor" as defined by section 103(g) of the Act. The court noted that "Congress intended the Tax Court to provide for rules governing burden of proof," so that "[i]n the absence of any intimation that Rule 32 is arbitrary or capricious there is no basis for disturbing the Tax Court's allocation of the burden." Id. at 417. There is no indication of how the Court of Appeals would have allocated the burden of proof if it had had the opportunity to formulate the rule itself. In Boeing Co. v. Renegotiation Board, 325 F.2d 885 (9th Cir. 1963), and Consolidated-Hammer Dry Plate and Film Co. v. Renegotiation Board, 375 F.2d 591 (7th Cir. 1967), the issue of burden of proof was never reached because the courts concluded that it was neither a constitutional nor a jurisdictional issue. Thus neither of these decisions suggests that the Renegotiation Act requires the contractor to bear the burden of proving that his profits were not excessive.

## II

■■■ In approaching our determination of which party should bear the burden of proof in a renegotiation suit, we think it is important to point out the dissimilarities between renegotiation cases and other cases filed in this court. As we have already noted, a renegotiation case is not analogous to a suit for refund of taxes because no presumption of correctness attaches to the Board's order determining excessive profits. In fact, a renegotiation case is unlike any other case filed in this court, because the plaintiff here is not seeking to recover a money judgment against the United States. It is the Government, based upon a unilateral order of the Renegotiation Board, which asserts that the contractor owes it money. If the contractor wholly prevails, the court will enter a declaratory judgment that no excessive profits were realized during the year involved.

Nor is a renegotiation case similar to other cases in this court where the plaintiff seeks review of a prior administrative decision and the court is confined to the administrative record. In a renegotiation case, the contractor's de novo suit here is his first opportunity to be heard in a manner consistent with procedural due process. This was made abundantly clear by the Supreme Court in Lichter v. United States, 334 U.S. 742, 791–792, 68 S.Ct. 1294, 1319, 92 L. Ed. 1694 (1948), where the Court noted that the Renegotiation Act did not contemplate that procedural due process be afforded in the proceedings before the Board:

As to the effect of the statute and of the course of action taken, we hold that the statute did afford procedural due process to the respective petitioners but that none of them made use of the procedure so provided for them. Consistent with the primary need for speed and definiteness in these matters, the original administrative determinations by the respective Secretaries or by the Board were intended primarily as renegotiations in the course of which the interested parties were to have an opportunity to reach an agreement with the Government or

---

20. As of February 15, 1972, we made such changes in our rules as we thought necessary for the effective disposition of renegotiation cases. The revision omits any requirement that the plaintiff include in his petition a copy of the Board's determination of excessive profits. Instead, our new Rule 26(a) requires only that the plaintiff furnish a copy of the Board's order to the clerk of the court, who needs it for the purpose of fixing the amount of the plaintiff's bond.

in connection with which the Government, in the absence of such an agreement, might announce its unilateral determination of the amount of excessive profit claimed by the United States. *This initial proceeding was not required to be a formal proceeding producing a record for review by some other authority.* In lieu of such a procedure for review, the Second Renegotiation Act provided an adequate opportunity for redetermination of the excessive profits, if any, *de novo* by the Tax Court. "The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." Opp Cotton Mills v. Administrator, 312 U.S. 126, 152–153, 61 S.Ct. 524, 535, 536, 85 L.Ed. 624.

### III

■ We have referred to plaintiff's willingness to furnish the income statement and balance sheet information required by the trial commissioner's order. In the course of pretrial proceedings, which may include an audit of plaintiff's books by defendant, the parties will likely stipulate the accuracy of much of the financial data submitted by plaintiff. However, if there is a dispute about such data, plaintiff has the burden of going forward with evidence proving the accuracy of the financial data, including the segregation of the accounting on renegotiable business from nonrenegotiable business and the propriety of plaintiff's cost allocations under accepted accounting principles.

■ In the exercise of our discretion, we also hold that the contractor has the initial burden of going forward with proof as to the statutory factors upon which it relies to the extent that the facts pertaining thereto are within its knowledge or possession, are accessible to the public generally in the form of published reports, or are *actually made available to the contractor* by the Government, voluntarily through a request made in pre-trial proceedings, by discovery under the rules of the court, or pursuant to the Freedom of Information Act, 5 U.S.C. § 552. Normally, when the contractor does this, it will have made a prima facie case, i. e., a showing which, unless rebutted, would justify a judgment in accord with the contractor's contentions. The statutory factors are set forth in 50 U.S.C. App. § 1213(e), and the Board's regulations with respect thereto appear in 32 C.F.R. §§ 1460.8 to 1460.14.

### IV

■ We think it would be improper and erroneous to hold that because plaintiff has pleaded certain allegations it has the burden of proving them. The burden of proof does not follow the burden of pleading in all cases, [21] and the application of the general rule would be particularly improper in this case. Plaintiff's original petition was filed in the Tax Court and by rule of that court, plaintiff was required to set forth in the petition assignments of error allegedly committed by the Renegotiation Board. Morever, our requirement that plaintiff must first go forward with proof as to the statutory factors does not mean that plaintiff has the burden of persuasion on the principal issue. It is well established that the production burden in a particular case may shift, depending upon the nature of the case and other considerations that dictate the order of proof. [22]

■ After a careful consideration of the nature of this case, the authorities on evidence, and the rules applied in comparable cases, we have concluded

---

21. *See* James, Burdens of Proof, 47 Va. L.Rev. 51, 60 (1961): "The burden of pleading is itself allocated on the basis of pragmatic considerations of fairness, convenience, and policy, rather than on any general principle of pleading."

22. *See* James, *supra*, note 21, at 62.

that when plaintiff has met the requirements stated above, the burden shifts to the Government to prove that plaintiff's profits were excessive and the extent thereof. This encompasses not only the burden of going forward with evidence after plaintiff's case in chief is closed, but also the burden of persuasion. [23]

The action brought by a plaintiff in a renegotiation suit in this court is comparable, in many respects, to that type of declaratory judgment action in which the plaintiff seeks a declaration of nonliability upon a claim by defendant against the plaintiff. In his discussion of the burden of proof in such cases, Professor Borchard states the following in his treatise on declaratory judgments:

### BURDEN OF PROOF

Since as a rule the risk of non-persuasion is on the plaintiff, it is not surprising to find that the burden of proof in declaratory actions rests, in the vast majority of cases, on the moving party. Yet, as we shall see, the peculiar nature of the suit for a declaration of non-liability may shift that burden to the defendant, the party who originally made the charge or claim, such as patent infringement, which is the basis of the action for a declaration of non-liability. So, in the suits of insurance companies for a declaration that the insured is not totally and permanently disabled as he claims. [sic] It would be rash, therefore, to conclude that the burden is always on the petitioner or actor, since the question depends often on the condition of the pleadings and the character of the issues when the question arises. [Borchard, Declaratory Judgments 404–05 (2d ed. 1941).]

In Reliance Life Ins. Co. v. Burgess, 112 F.2d 234 (8th Cir.), cert. denied, 311 U.S. 699, 61 S.Ct. 137, 85 L.Ed. 453 (1940), the plaintiff insurance company brought an action for a declaration of non-liability under a life insurance policy which provided for double indemnity for accidental death. The issue before the court was whether the insured's death was accidental or self-inflicted. In his concurring opinion, Judge Sanborn stated that the burden of proving that the decedent's death was accidental was upon the representatives of the insured rather than upon the insurance company:

My opinion is that the burden of proving the existence of the controversy was on the plaintiff, but that the burden of proving the fact upon which the defendants relied for the establishment of their right of recovery was upon them. I think it would be safe to say that when an actual controversy is presented to a court for adjudication through the medium of a suit for a declaratory judgment, the burden of proving, by a fair preponderance of the evidence, the existence of the fact or facts upon which the right and liabilities of the parties depend is upon him who has the affirmative of the issue which forms the basis of the controversy, without regard to whether he is plaintiff or defendant in the suit. * * * [Id. at pp. 240–241.]

There are many similar cases in which the same conclusion was reached with respect to the burden of proof. See, e. g., Baptist v. Bankers Indemnity Ins. Co., 377 F.2d 211 (2d Cir.), cert. denied, 389 U.S. 832, 88 S.Ct. 103, 19 L.Ed.2d 92 (1967), and Preferred Acc. Ins. Co. of New York v. Grasso, 186 F.2d 987 (2d Cir. 1951).

While the similarity between some actions for declaratory judgments and suits in this court to redetermine excessive profits lends persuasive support to our decision that the Government should bear the ultimate burden of persuasion, perhaps the best analogy involves those cases before the boards of contract ap-

23. Since the pretrial proceedings are an adjunct of the trial, the order in which the parties are required to make their pretrial submissions should conform to this decision.

peals in which a contractor appeals from a contracting officer's assessment of extra costs.

Whenever a contractor appeals a contracting officer's decision to a board, the contractor has a right to a de novo hearing. We have held that "no presumptive validity whatever" attaches to the contracting officer's decisions in such de novo appeals. Southwest Welding & Mfg. Co. v. United States, 188 Ct. Cl. 925, 954, 413 F.2d 1167 (1969). In many cases, the boards of contract appeals have held that where the Government seeks recovery from the contractor, the Government has the burden of proof in the de novo hearing before the board. For example, in Eastern Tool and Mfg. Co., ASBCA No. 4815, 58–2 BCA ¶1947, where the contractor appealed a contracting officer's assessment of the excess costs of reprocurement the board held that the Government had the burden of establishing its claim for excess costs. The boards have followed an identical approach in numerous other cases involving similar situations. *See,* *e. g.,* Conn Structors, ASBCA No. 6780, 61–1 BCA ¶ 3071 (appeal from a contracting officer's order reducing the contract price by changes); Tony Orlando, ASBCA No. 7023, 61–2 BCA ¶3154 (appeal from a contracting officer's assessment for savings and material used as a result of changes); Herold Radio and Television Mfg. Co., ASBCA No. 3642, 57–1 BCA ¶1180 (appeal from a contracting officer's decision assessing reprocurement costs against the contractor); Tufano Contracting Corp., ASBCA Nos. 5410, 5413, 59–2 BCA ¶2325 (appeal from a contracting officer's decision crediting the Government with the costs of allegedly deficient work) and Reading Clothing Mfg. Co., ASBCA No. 4153, 57–2 BCA ¶1454 (appeal from a contracting officer's decision that the Government should be credited with savings resulting from deviations in contract requirements). Here, as in those cases, the Government claims that the contractor owes it money. Therefore, in the de novo proceed-

ing before this court, we think it is proper to place upon the Government the burden of proving, by a preponderance of the evidence, that the plaintiff realized excessive profits, as well as the amount of such excessive profits. Such placing of the ultimate burden of persuasion will enforce Congress' insistence that the trial here is to be de novo and that no presumption attaches to the Board's determination.

V

Finally, we emphasize that this decision is not a blueprint for the trial, nor is it intended to resolve every burden-of-proof question that may arise in these cases. However, we are hopeful that when such questions are raised, they will be disposed of satisfactorily by our trial commissioners in the course of pretrial proceedings, which we think are well adapted for the handling of these cases.

The commissioner's decision is vacated and the case is remanded for further proceedings consistent with this opinion.

59 CCPA