"This case is before the court on a request by defendant pursuant to Rule 53(c)(2)(ii) for prompt review of a procedural order entered by Trial Judge Harry E. Wood. The suit is one for redetermination of alleged excessive profits under 50 U.S.C. App. § 1218 as amended. The plaintiff, seeking discovery, filed interrogatories under Rule 73. Defendant initially promised to furnish files from *423 which plaintiff could obtain what it wanted, but belatedly came to realize the burdensome nature of the task it had taken on itself, and that the rights of third parties were involved. It thereupon moved for a protective order under Rule 71(f). The trial judge took the view that defendant failed to make a timely objection, but rather had repeatedly advised that it would respond and has in fact made some kind of response to most interrogatories, and therefore any injury was self-inflicted. However, he did allow defendant to notify third parties if it chose, within thirty days, and to defer divulging third party data until this is done.
"It appears to us that counsel on both sides are subject to criticism. Counsel for plaintiff has filed interrogatories that appear to us a farfetched extension of the discovery procedure. Counsel for defendant did not speak out against them promptly as he should have done. By the trial judge’s order, one party is rewarded for making excessive demands, the other is punished for not promptly objecting to them. We consider that important interests are at stake, which cannot be destroyed by us because of counsel’s neglect.
"Both sides purport to rely heavily on our decision in Instrument Systems Corp. v. United States, 212 Ct. Cl. 99, 546 F.2d 357 (1976) and Marinette Marine Corp. v. United States, 212 Ct. Cl. 114, 546 F.2d 365 (1976). Both cases address the problem of discovery in renegotiation redeter-mination. In Instrument Systems we noted that comparisons with other companies, third parties to the litigation, were essential in renegotiation at both the administrative and judicial stages. We tried to cool the discovery heat of counsel for plaintiffs, holding that the moderate burden on a plaintiff to make a prima facie case did not require him to submit data as to the business of third parties to the litigation, beyond that available under the Freedom of Information Act (FOIA) 5 U.S.C. § 552. Defendant, we said, was the party who must lose if the comparative data was inadequate for an informal and reasoned judgment. The Renegotiation Board was the only source of third-party data referred to in the Instrument Systems opinion, and it still would appear to be by far the best. The Board had been involved in much FOIA litigation and as a result, had announced what material would be available to anyone who asked, and what would be withheld. This was a well *424 understood predicate to the decision. We thought, as a general thing, defendant should provide to any litigant who asked in discovery, any data the litigant could obtain directly from the Board under the FOIA. We hoped in most cases this would suffice. If not, the party demanding more out of Board files should be required to notify the third parties whose privacy rights might be infringed, and the trial judge should consider their objections before ruling.
"None of this by its own terms or by any logical extension had any application to any documents in the files of other government agencies. We called what we were talking about 'third party renegotiation documents,’ which would not refer to documents generated in the course of contract performance or contract audit. Nearly the whole discussion was about the Renegotiation Board’s Form RB-1 and at the end of the opinion we said:
If any disputes arise about documents generated during and at the end of renegotiation [emphasis supplied] what we have said can be applied by analogy.
"Plaintiff is in error in relying on Instrument Systems as authority that defendant should cull out of discovery files any third-party documents it deems exempt under the FOIA exemptions, or otherwise privileged, and turn over the rest without notifying third parties. Except in regard to Renegotiation Board documents, when the task appeared ministerial, this would involve debatable decisions regarding disclosure of possibly confidential business data of third parties without their having a chance to be heard, the very thing we disapproved in Instrument Systems. We do not think government agencies are wholly to be relied on to protect third party interest, and defendant’s blithe assurances on the filing of the interrogatories here affords further evidence that this is so.
"If there is any other instance where the scope of an agency’s duty to withhold or to furnish data under the FOIA is as clean-cut as it is with the Renegotiation Board, so as to make it needless to hear from the third parties, neither side has pointed it out. So far as appears, any decision on the papers demanded here would be made by defendant ad hoc, without recourse to any previously announced rule.
"In Marinette Marine Corp., supra, we turned to the problem presented by a renegotiation plaintiff who wanted *425 discovery of documents in possession of procurement officials, not the Renegotiation Board. Plaintiff, a shipbuilder, wanted to discover documents relating to contracts awarded to other shipbuilders, specifically pre-award surveys and cost breakdowns submitted in support of bids. All the third-party shipbuilders had been notified. The trial judge forbade defendant to turn over cost breakdowns submitted by bidders who moved for protective orders, and held it need not produce any others. As to pre-award surveys, he held defendant might not produce or turn over those the subject of objections by third parties, but should turn over those relating to third parties who did not object. In both classes of cases there were express commitments of confidentiality to the third parties, in ASPR 1-907 and in the IFB’s.
"In that case the only request for review was by plaintiff; but we thought the trial judge had erred, if at all, in favor of plaintiffs discovery. We pointed out the requirements of our rule that the discovered material be relevant (Rule 71(b)(1)) and we stressed the dubious relevance for comparison purposes of cost data that was not assembled on the overall fiscal year basis, but with reference to particular contracts, that related to anticipation, not experience, and that was governed as to allowability by rules other than the Internal Revenue Code.
"Turning now to the present interrogatories, they start out with lists of companies. One list of 20 names, described as producers of 'projectiles of interest’ and 'cases of interest,’ will be called hereinafter 'the 20.’ Another list of 71 names is made up of producers of 'metal parts.’ They will be called hereinafter 'the 71.’ This indicates the scope of the discovery desired by plaintiff into the business of third parties.
"Interrogatory 2 requires identification of each contract awarded from 1966 to 1972 to companies on the 20-name list, with details whether negotiated or formally advertised, if negotiated, whether competitive or sole source, types of projectiles or cases, quantities, unit prices, delivery schedules, amendments, and—
C. Identify by date, type of document, and present location each and every document relied upon in preparing your answer [as to delivery schedules, revisions thereto, and the reasons for such revisions.]
*426 This frequently is repeated with other interrogatories.
"Interrogatory 3 calls for the lot size and lot number of each shipment made to the U.S. Government from 1966 to 1972 under each of the contracts of each of the 20. [emphasis supplied; it is difficult to conceive how knowledge of the quantity of each shipment by 20 companies aids in the renegotiation of the 21st.]
"Interrogatory 5 requires the story separately as to each rejection under each contract of the 20.
"Defendant, by Interrogatory 6 is required to furnish details as to the 71, including how many square feet of land each one owned and devoted to metal parts projects, and how many square feet each one leased from the government.
"Interrogatory 7 requires a broad survey of the history of each ordnance plant, not apparently limited to 1966-72.
"It is needless to summarize further interrogatories one by one. A few random highlights will suffice.
"Interrogatory 17 calls for identification and description of all of what it calls 'negotiation files’ of the 20, which would seem to cover all pieces of paper relating to their contracts, not demanded elsewhere.
"Interrogatory 19 demands details as to budget requests submitted to the Congress. Again one wonders what this had to do with renegotiation.
"No. 21 relates to all documents recording meetings of the defendant’s Source Selection Board, its Source Selection Advisory Council, and its Award Board, as to all contracts awarded the 20 in 1966-1972.
"No. 25 demands pre-award surveys of the 20, the identical thing disapproved for discovery, unless the survey contractor consented, in Marinette Marine Corp., supra. Nos. 25 and 27 reflect examples of the consistent practice of demanding, for other contracts with other companies, identically the same full documentation demanded in preceding interrogatories as to plaintiffs contract.
"No. 28 demands full data as to all terminations of members of the 71 for default.
"No. 32 demands, as to the 20, all GAO determinations respecting defective pricing.
"No. 35 demands data as to all plant visits reported by defendant’s officials to any of the 20.
"No. 37 demands all documents wherein defendant projected the useful life of any equipment furnished by defendant to any of the 20.
*427 "No. 39 wants to know what kind of steel was used to perform each and every contract awarded to the 20 in 1966-72.
"No. 46 demands inventory of the entire government file concerning National Presto Industries, Inc. v. United States, 167 Ct. Cl. 749, 338 F.2d 99 (1964), cert. denied, 380 U.S. 962 (1965). That case adjudicates a controversy that arose in 1952. Nos. 47-50 may relate to the same dispute. No. 56 relates to government inspectors maintained at any of the 20, following up No. 55 which demands the same information as to the plaintiff.
"No. 72 demands by date and amount, all progress payments to any of the 20, and by quantity, type of material, and cost, all government furnished material.
"No. 73 demands, for each of the 20, a description of their labor relations: all strikes, average absenteeism, and descriptions of any incentive plans implemented.
"No. 76 demands for each of the 71, the fringe benefits to executives, gratis use of cars and planes, special dining rooms, etc.
"No. 79 demands for each of the 20, profit on defense contracts stated per projectile or case, and as a percentage of sales, with breakdowns of G&A, labor cost, overhead, etc.
"We cannot but conclude these interrogatories are full of irrelevancies, but note that plaintiff has not yet undertaken to specify what their relevancy may be in its mind. In making the foregoing recitals, we have passed over demands related to the plaintiffs own defense contracts, and all apparently meant to be answered from Renegotiation Board files, even when, in the latter case, they relate to third parties. We consider the controversy we are asked to review primarily relates to information about third parties, not obtainable from the Renegotiation Board. We think the demands relating to the affairs of the 20 and the 71, paralleling as they do the demands respecting the plaintiffs own affairs, must reflect a theory that the renegotiation of plaintiffs contracts requires, as an incident thereto, renegotiation of all members of the 20 and the 71; or to put it another way, the trier of facts, in using comparisons, must know as much about the comparison companies as he would need to know if he were renegotiating them directly, or as much as he knows about the company whose case is before him. We believe that the conduct of all our redetermination cases under 50 U.S.C. *428 (App.) § 1218 under such a theory would make it impossible to dispose of our case load now pending in this century. Plaintiff, apparently aware of this obvious fact, says that the effort is justified in its case because it is such a very large one. This is no excuse. Plaintiff ignores the rights of the third parties involved, and the problem as to the misuse of judicial resources chasing irrelevancies.
"In Instrument Systems, supra, we said, after stating our view as to the importance of comparisons in renegotia-tions—
On the other hand, it is necessary to prevent the renegotiation of one contractor being magnified by counsel into the renegotiation of all its competitors. Once the most immediately relevant data of the other case is at hand, inquiry into all its ramifications must be resolutely halted.
In Marinette, we added that consideration of comparison cases must proceed by reference to financial results, on an overall fiscal year basis, without reference to results under particular contracts, that may extend over several years.
"In the Tax Court, before the amendment to section 1218, supra, the trial of renegotiation redeterminations was a relatively simple matter. It was not the intention of Congress to change this for the worse when it made us the court for trial de novo. It was not our intention, in reallocating the burden of proof, as we did in Lykes Bros. Steamship Co. v. United States, 198 Ct. Cl. 312, 459 F.2d 1393 (1972), to convert trials into real life reenactments of the fictional Jarndyce v. Jarndyce.
"Plaintiff apparently thinks but little of our effort in Instrument Systems to cool the discovery ardor of plaintiffs in view of the fact that defendant carries the burden of proof. It fears that defendant might put forward a few comparison cases selected to support its position, leaving the plaintiff and the court in the dark about all the others. Whatever validity this theory might have in some cases, here plaintiff already has its own list of comparison cases. The cases defendant intends to use should be known in pretrial and any such selectivity as, feared should be revealed in ample time to force disclosure of all relevant comparisons, whomever they help or hurt. If, however, defendant attempted to use, either directly or filtered through its experts’ minds, a scope of factual inquiry *429 corresponding to that proposed here, we think it would be equally an abuse.
"Under our rules, as stated in Marinette Marine, Rule 71(b)(1) discovery is provided regarding matter '* * * which is relevant.’ As the rule further provides, discovery may be used to discover inadmissible matter if it appears 'reasonably calculated to lead to the discovery of admissible evidence.’ Plaintiff does not particularly rely on the added proviso, and in any event, the whole scheme of plaintiffs discovery seems to be to treat as relevant every detail of the entire history of government relations in 1966-72 with the 20 and the 71. If there was any piece of paper written on in course of those relations that the plaintiff does not demand access to in discovery, we do not know what it was.
"Our conclusions, then, are as follows: (a) Discovery of Renegotiation Board files that concern third parties can proceed to the extent and in the manner prescribed in Instrument Systems. This should take precedence in time since it is far more likely to generate relevant evidence, and for the necessary comparisons, no other may be needed, (b) Discovery of the plaintiffs own renegotiation by the Board, and the plaintiffs own contractual relations with defendant, we exclude from the scope of our review at this time, (c) Discovery of third party contract data in government files other than those of the Renegotiation Board is generally of questionable relevance and may proceed only after the third parties have been notified and given an opportunity to object, except as hereinafter stated, in subparagraph (d). The trial judge must go over the interrogatories with the parties and be given some explanation why they call for relevant information, some explanation other than the unacceptable technique of total renegotiation of the entire industry for the renegotiation of any one. (d) If the trial judge is satisfied that there is any other government office or document depository as to which the rules of FOIA access are as well settled and clearly announced or as easily applied, as they are with the Renegotiation Board, discovery of non-exempt material may proceed as to them, according to such rules as the trial judge may prescribe, following Instrument Systems in principle. If plaintiff relies on this exception, it must clearly identify the office or depository and cite the applicable rules or standards. Plaintiff may not call upon defendant, without notice to third parties, to roam about *430 the country and produce from everywhere documents of stated characters and to decide their FOIA status ad hoc and without notice to interested third parties who might be able to show the classification was erroneous.
"Thus, the notices to third parties must be given, and third parties must be given a chance to object, if documents relating to their contract awards, performances, audits, etc., are to be discovered, and the decision whether such documents are or are not exempt from FOIA disclosure is not to be made exparte vis a vis them. The only exception is the Renegotiation Board and any other identified agency or depository as to which the trial judge is satisfied the conditions are similar.
"Plaintiff does not ask for discovery of documents defendant would say are not available under FOIA at this time, and we make no ruling with respect to them.
"We therefore turn to who must give the notice and its contents. If, after consideration of the justification for relevancy plaintiff may advance, the trial judge is satisfied that discovery of third party documents may proceed, he is to direct the defendant to give the notice. Normally, as stated in Instrument Systems, the party desiring the discovery should give the notice, but in this instance we agree with the trial judge that defendant should, because of its delay in making its objections. Defendant, however, must give the notice before allowing the discovery. It is not a matter of 'may.’
"As to the contents of the notices, they will have to differ from those suggested in Instrument Systems. Instead of stating the FOIA status of clearly identified documents, they will have to say the recipient must himself decide whether to claim the FOIA exceptions. A copy of the FOIA can be provided, and copies of any interrogatories that may concern the notice addressees. We point out that the purposes were different in Instrument Systems. The notices were to be given where material exempt from FOIA disclosure was sought. Here for the present, at least, plaintiff does not want any such material. The purpose of the notice is for the addressee to decide whether he wants to claim an exemption, and if he does, to state with what justification, and where does he draw the line? The other suggestions made in Instrument Systems remain valid.
"Accordingly, review of the trial judge’s February 6, 1978, order is granted, and it is hereby vacated. The cause *431 is remanded to the trial judge for further proceedings consistent with this order.”